## Corbin Banking Co. v. Mitchell, et al.

(Decided December 14, 1910.)

### Appeal from Whitley Circuit Court.

1. Banks—Assessment to Restore Impaired Capital.—The Secretary of State is authorized by section 586 of the Kentucky Statutes to order a bank to make good by assessment of the stockholders any impairment of its capital stock; and, under this authority, he is invested with a large discretion as to the amount of the assessment, and this discretion will not be interfered with, unless abused.

2.  Assessment of Shareholders.—When so directed by the Secretary of State, the board of directors of a bank are authorized to assess against the shareholders the amount ordered to be paid by the Secretary of State, and this assessment they may enforce the collection of in an action against the shareholder if he fails or refuses to pay.

3.  Assessments—Lien Upon Stock.—An assessment made by the board of directors is a lien upon the stock of the shareholder. If the assessment is not paid, the bank may sell the shares of stock of the delinquent shareholder to pay the assessment.

4.  Assessment—Lien Upon Stock in Hands of Pledgee.—Every shareholder takes and holds his stock in a bank subject to the right of the board of directors to enforce a lien upon it for the purpose of restoring the impaired capital of the bank, and this lien may be enforced against the stock in the hands of a pledgee for value.

5.  Application of Principle.—The board of directors of a bank, in pursuance of an order from the Secretary of State, assessed the shares to make good the impairment of the capital stock, and adopted a by-law giving it a lien upon the stock to make good the assessment, providing that if the assessment was not paid the stock would be sold to satisfy it. Before this assessment was ordered, a shareholder had pledged his stock to another person, who was so holding it. Held, that the lien of the bank is superior to the lien of the pledgee.

SAMUEL M. WILSON for appellant.

TYE & SILER for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The Corbin Banking Company was created under the laws of this State with a capital stock of $25,000. The Secretary of State having information that the capital stock of the bank was impaired, addressed a letter to the president of the company asking him to have the impairment made good by an assessment of the stockholders to the amount of the par value of the shares of the capital stock. Upon receiving this direction from the Secretary of State, and in compliance therewith, the board of directors at once met and adopted a resolution, setting out that the board of directors "do hereby levy and assess upon each share of stock of said bank now outstanding and in the hands of the holders of said shares as the names and addresses of said holders appear on record on the books of

this bank, the sum of $100 per share, same being 100 per cent. of the par value thereof, and we do hereby make and call upon said shareholders and owners of said stock for the payment of said assessment within ten days from this date, and in default of such payment within thirty days from this date the shares of stock upon which said assessment is made shall be held and treated as in lien to the bank for the payment and satisfaction of said assessment under and by virtue of the Ly-law this day adopted by the board of directors and as provided in said by-law this board may proceed after the expiration of thirty days from this date to enforce said lien and to subject said shares of stock to the satisfaction of said assessment to the extent that each share is severally charged therewith and liable therefor, * * * and after the expiration of thirty days from this date, the lien which shall attach to outstanding stock to secure the payment of any unpaid assessments may be enforced by the sale of such stock in the manner provided in section 580 of the Kentucky Statutes for the collection of the amount due, with costs and interest, on any unpaid subscriptions to stock or any installments due thereon, and in default of such sale the amount previously paid in by the delinquent on the stock shall be forfeited to the bank by order of the board of directors and thereafter treated as is provided in section 580 with respect to original subscriptions to stock.''

At the same meeting the board of directors adopted this by-law:

''Whenever an assessment against the stockholders in this bank shall be ordered by the Secretary of State of Kentucky pursuant to the authority conferred upon him by section 586 of the Kentucky Statutes and the board of directors shall have levied such an assessment and made a call therefor against the shareholders according to their several and respective holdings of stock in this bank, that such shareholders shall be at once notified in person or by letter, addressed to them at their last known address as shown upon the records of the bank, and demand payment of such assessment, immediately within ten days after such assessment is made; and in the event that such assessment be not paid within thirty days after call is made, the bank shall have a lien upon the shares of stock owned or held by the stockholders

against whom such assessment is made, and said stock shall be in lien for the payment and satisfaction of such assessment to the extent that each share is severally liable therefor; and at the time that the stockholders of the bank are notified of the making of such assessment, and are called upon to pay the same, they shall also be notified of this by-law of the bank and to enforce the said lien on their stock the board of directors may proceed as is provided in section 580 of the Kentucky Statutes with respect to the collection and enforcement of payment of delinquent subscriptions to stock or the collection or payment of any installments due thereon, and stockholders shall when called upon to pay the assessments above mentioned be further notified of the power hereby conferred upon the board of directors with reference to selling or forfeiting the stock by shareholders which may be liable for the payment of such assessments; and the board of directors are authorized and required to proceed to collect or to enforce the payment and satisfaction of any assessments so levied upon stock against shareholders in the bank as hereinbefore provided.''

Section 586 of the Kentucky Statutes, under authority of which the Secretary of State directed the bank to make good the impairment of its capital stock, reads as follows:

"Should the capital stock of any bank organized under this article become impaired, the Secretary of State shall give notice to the president to have the impairment made good by assessment of the stockholders, or by a reduction of the capital stock to an amount not less than that required to organize; and if such bank shall fail for thirty days after such notice to make good the impairment, the Secretary of State may, with the advice and consent of the Attorney General, institute such proceedings as may be necessary to wind up the affairs of the bank."

Section 580 of the Kentucky Statutes, which the directors followed in the resolution and by-laws, directing how the lien on stock of shareholders who failed to pay the assessment should be enforced, reads in part:

"* * * And when any stockholder fails to pay any installment on the stock when requested by the directors, they may sell a sufficiency of the stock of such delinquent at public sale to pay the amount due, with cost

and interest, having first given him twenty days' notice in writing, if he reside in the county, or, if not, by letter mailed to his last known address, of the time and place where the stock will be sold; or they may collect the amount due by action. If no bidder can be found to pay the amount due on the stock, and it cannot be collected, the amount previously paid in by the delinquent on the stock shall be forfeited to the bank, by order of the board of directors, and such stock sold by it within twelve months thereafter; and if not so sold, it shall be cancelled and deducted from the capital stock of the bank; if sold before cancellation, any surplus, after the payment of the amount due, and interest and costs, shall be paid to the original stockholder or his assigns. * * *''

This section was designed to afford the bank a remedy by which it could enforce the payment of unpaid subscriptions of the capital stock, and in this instance the directors adopted the method pointed out for the enforcement of unpaid subscriptions as the most satisfactory means to enforce the payment of the assessment made in the event the stockholder failed or refused to pay it.

The appellee J. H. Mitchell, long prior to the notification by the Secretary of State had become the owner of five shares of capital stock of the bank, and a certificate for this stock had been issued to him, and on the books of the bank he appeared the owner of it. After obtaining the certificate, and before the Secretary of State directed the bank to make good the impairment of its capital stock, Mitchell executed his note to appellee Mauney for money borrowed and to secure the payment of the note pledged to and with Mauney as collateral security the shares of stock owned by him. At the time the directors adopted the resolution and by-law before mentioned, this certificate of stock was so held by Mauney, and we may here note that Mauney took the stock in good faith to secure the payment of a bona fide debt. The bank delivered to Mitchell and Mauney a copy of the resolution and by-law, but neither of them paid or offered to pay any part of the assessment, and they also refused to surrender the stock to the bank. Thereupon the bank brought this suit against Mitchell and Mauney, setting up the facts heretofore stated, and further averring that the stock on account of the condition of the bank had little or no value, and a sale of it could not be made without the surrender of the stock

to the bank. It asked for judgment against Mitchell for $500, the par value of the stock, and interest thereon, that it be adjudged a first and prior lien upon the stock held as collateral by Mauney, and that they be required to surrender the stock to it or to the court, and that it be adjudged forfeited for the non-payment of the assessment or that the court order the sale of it or of so much of it as might be necessary for the enforcement of the lien asserted by the bank. To this petition a general demurrer was sustained, and the petition dismissed.

In the consideration of this question it is well to keep in mind that the capital stock of a bank is a trust fund for the benefit and protection of depositors and creditors of the bank and so it is of the highest importance that this fund should be kept unimpaired. It was to preserve unimpaired this trust that the Secretary of State was invested with the authority to compel bank directors under pain of the institution being put in the hands of a receiver to make good any impairment of its capital. Every stockholder in a bank takes and holds his stock with the understanding that the capital stock must not be permitted to become impaired, or, if it is, that the Secretary of State may require the directors to make an assessment upon the stockholders in such a sum as in his judgment is necessary to restore it. Indeed we might say that this statute is a part of the contract between the shareholder and the bank and is one of the burdens assumed by the shareholder when he takes his stock. As the shareholder takes his stock impressed with these conditions, it follows that any person to whom the stock is sold and transferred by him also takes it subject to these statutory burdens and conditions. In other words, the transferee of the stock cannot hold it under different or better conditions than the person to whom it was issued. But, conceding all this, it is said that the remedy of the bank is against the owner of the stock and not against the shares of stock, and that although the directors have authority when so ordered by the Secretary of State to make the assessment, that the assessment is a personal obligation against the shareholder and not a lien upon or a claim against the shares of stock held by him. And so while admitting that the bank could make the assessment against Mitchell, and proceed by action to collect from him by the ordinary processes of law the amount of the assessment, it is denied that the bank had authority to

assert a lien upon the stock to secure the payment of the assessment. It will thus be seen that the only question presented for decision is, did the bank for the purpose of enforcing the payment of the assessment made against Mitchell have a lien upon the stock, and if it did, is its lien superior to the lien of Mauney? Although the statute does not in terms give the bank a lien upon the stock of the shareholder against whom the assessment is made, we think it follows as a necessary incident of the right to make and enforce the collection of the assessment. It is true that the assessment is against the shareholder, but it grows out of the fact that he is the owner of the shares of stock, and if the bank could not take hold of or operate upon the shares, it would often happen that the assessment against the shareholder would be a useless thing, for if the shareholder was insolvent the assessment could not be collected. The result then would be that if the bank in its effort to make the assessment good was limited to the shareholder personally, and he was insolvent, it could not comply with the direction of the Secretary of State unless the other stockholders voluntarily chose to make good the assessment. And so it would be that if the number of insolvent shareholders was considerable, and the solvent ones did not assume to pay in addition to their own the assessments against the insolvent shareholders, the bank would go into the hands of a receiver and thus much loss would be incurred that might have been averted if the stock could have been reached. The further effect would be that the insolvent shareholders would control the situation, and be in a position to dictate terms to the solvent ones, or, subject them to loss that they ought not to suffer. In addition to this shareholders would be tempted not to pay assessments. Taking another view of the matter, and assuming that the solvent shareholders made good the assessment by paying not only their own but the assessment of the insolvents, the result would be that the shareholders who had not paid any part of the assessment would have the value of their stock increased in value to the extent of the payments made by the solvent shareholders. Thus the insolvent stockholders would get an advantage they were not entitled to and in justice ought not to have. Their stock would have a value created by the enforced contributions from the solvent stockholders. To compel one or more shareholders to make good an assessment and

then permit the others who did not contribute anything to make it good share equally with them in the advantage that accrued by reason of the assessment, would be unjustifiable discrimination. No good reason can be advanced why such a preference should be allowed. In bearing the burdens and sharing the benefits of a corporation, all the stockholders should be treated alike. In this particular no advantage or preference ought to be allowed one shareholder over another. It would, therefore, seem necessary in order to place stockholders on an equal footing that the bank should have the authority to lay hold of the stock itself, or the authority to cancel the stock of a non-paying shareholder or reduce its value to such an extent as that he could not reap any benefit from his failure to pay. Of these means by which the delinquent stockholder might be compelled to bear his equal burden, the fairest and simplest is the one by which the bank may take possession of the stock and offer it at public sale to make good the assessment, or in other words, pursue the method pointed out in section 580 of the statute. When the shareholder who cannot or will not pay his assessment is required to surrender his stock to the corporation in order that it may be sold at public outcry to satisfy the assessment, no injustice is done. The delinquent shareholder cannot complain that he is required to surrender his stock when reasonable opportunity has been afforded him to make good his assessment.

But, it is said that although this line of reasoning might be sound, if the stock was in the hands of the shareholder, that it loses its force when it is attempted to extend the remedy and take the stock from a pledgee like Mauney who in good faith advanced money upon the credit of it. But, should the pledgee hold a better position than the shareholder? It is true that at the time Mauney received the stock Mitchell had the right to transfer it to him, and that it was apparently free from any lien. It is also doubtless true that Mauney had no notice of the condition of the bank, and was induced to advance his money under the belief that he was fully protected by the certificate of shares. But here again the public interest must prevail, and Mauney must be treated as holding the stock subject to the paramount right of the Secretary of State and the directors acting in obedience to this demand to require that it be subjected to protect those who upon the faith of the capital

stock were induced to place their money in the bank or to give it credit. If the pledgee were permitted to hold the stock, and yet not make good the assessment, he would be given an advantage and a preference that other holders of stock did not enjoy. From the solvent shareholders the bank could collect the assessment, and from the insolvent shareholders take his stock, but the pledgee would be exempt from both of these liabilities. The stock in his hands that was worthless or greatly depreciated would by payments made by other shareholders be increased in value and so it would be that the pledgee would get an advantage solely because of involuntary contributions made by other shareholders than his pledgor. It does not seem to us that he ought to be allowed to occupy any better position than the owner of the shares. If the shares are issued subject to the condition that they be assessed, then the right of assessment follows the shares into the hands of every person who has them. No distinction can in fairness be made. If the pledgee does not want to pay the assessment, he ought not to be allowed to hold the stock and have its value increased by the payments made by shareholders other than the pledgor. If he wishes to enjoy the advantage of the increased value of the stock, he ought to contribute his share to the fund that increases its value. This he can do through the shareholder, and as between him and the shareholder will have a lien upon the stock to indemnify him for the amount paid.

A great deal is said in the record about the right of the bank to establish the by-law which it did, and our attention is called to a number of authorities holding that directors have no authority to adopt by-laws that will prejudice in any way the rights of pledgees of stock or persons who take it without notice of the by-laws. We do not, however, think it necessary to go into an extended discussion of the power of banks or corporations to establish by-laws. It may, however, be freely admitted that a bank would have no right to establish or enforce a by-law giving it a lien upon the stock to secure a debt due to it by the shareholder, if doing this would prejudice the rights of a pledgee in good faith. But, that question is not here. The by-law adopted by the board of directors of the appellant bank was not adopted for the benefit of the stockholders, or to save the bank from loss on a contract obligation, it was made to carry out the direction of the Secretary of State. It was made for the

benefit of and to protect the public who were creditors and depositors of the bank, and as a means by which this might be done. When the secretary ordered the assessment, it became the duty of the board of directors to adopt such measures as were necessary to comply with the order. It was obliged to take some action, and it seems to us that the action it took was reasonable and fair to all of the shareholders, as well as to persons not shareholders but who were in possession of stock. It gave to each shareholder or pledgee of stock ample opportunity to elect whether he would pay the assessment or surrender his stock, although of course a solvent shareholder could not escape the assessment by surrendering his stock. But a pledgee, not being legally bound to pay the assessment could surrender the stock in his possession and thus relieve himself from all liability.

It is further suggested that the Secretary of State had no authority to order an assessment of one hundred per cent. But the statute does not limit the amount of the assessment that the Secretary may order, except that it shall not be in excess of the par value of the stock. The section giving the Secretary this authority invests him with a large discretion, and we would be reluctant to interfere with his action·unless it was clearly shown that the discretion vested in him was abused. There is nothing in the record that would authorize us to reach such a conclusion.

Wherefore, the judgment is reversed, with directions to overrule the demurrer to the petition, and for further proceedings not inconsistent with this opinion.