B. A. DOLAN, Appellant, v. ORSON O. NEWBERRY et al., Appellees.

**FRAUDULENT CONVEYANCES:** Voluntary Conveyances—Presump-
1 **tion.** A voluntary conveyance by a husband to his wife, or by a parent to his child, is *presumptively* fraudulent as to existing creditors.

**FRAUDULENT CONVEYANCES:** Acquiescence of Creditor—Evi-
2 **dence.** Evidence held insufficient to show that a creditor had advised and acquiesced in the execution of the very deed which he was seeking to set aside.

**HOMESTEAD:** Voluntary Conveyance—Burden of Proof. The prin-
3 ciple that the grantee in a voluntary conveyance of a homestead may sustain the conveyance against the claims of the creditors of the grantor necessarily imposes on the grantee the burden of showing the homestead character of the property.

Headnote 1: 27 C. J. pp. 565, 572, 791.   Headnote 2: 27 C. J. p. 481.   Headnote 3: 27 C. J. pp. 441, 796.

*Appeal from Lee District Court.*—W. S. HAMILTON, Judge.

MARCH 10, 1925.

SUPPLEMENTAL OPINION SEPTEMBER 29, 1925.

ACTION in equity by a judgment creditor to set aside certain conveyances by the judgment debtor as in fraud of creditors, and to subject the property to the judgment. The facts are stated in the opinion. Upon a trial, the petition was dismissed, and judgment rendered against plaintiff for costs. The plaintiff appeals.—*Reversed and remanded.*

*Hughes & Dolan,* for appellant.

*Herminghausen & Herminghausen* and *John J. Seerley,* for appellees.

VERMILION, J.—The appellant, as judgment creditor of O. O. Newberry, brought this action against Newberry and his daughter Rosalie, to set aside certain conveyances by Newberry and his wife, as being voluntary and in fraud of creditors. At the close of plaintiff's evidence, the court dismissed the petition, and rendered judgment against appellant for costs.

1. FRAUDULENT CONVEYANCES: voluntary conveyances: presumption.

It appears from the evidence that, on October 3, 1911, Newberry, by warranty deed, conveyed to his wife, Helen V. Newberry, for an expressed consideration of "one dollar and other consideration," the land in controversy, with other land, in all some 1,237 acres. On October 11, 1913, Helen V. Newberry and her husband conveyed the land in controversy, with 40 acres additional, all being a part of that previously so conveyed by him to her, to their daughter, the appellee Rosalie Newberry, for an expressed consideration of $1.00. It is not disputed but that these conveyances were voluntary. Helen V. Newberry died before the commencement of this action.

Prior to these conveyances, Newberry and his wife had conveyed the 1,237 acres to J. C. Jordan, and had begun an action against Jordan to have the deed declared to be a mortgage, Jordan's contention being that it was an absolute conveyance, with an agreement to reconvey on certain terms within a stipulated time. That case was decided, and Jordan's contention sustained, on July 28, 1911. On September 30, 1911,

Jordan reconveyed the property to Newberry, on payment of the amount required in the decree in that case. This amount Newberry raised by mortgages on the land. Appellant's judgment is for services rendered to Newberry as his attorney in that action.

On April 24, 1913, the equity in the land, except that conveyed to the daughter, was traded to Walter I. Manny, for a stock of goods taken at $20,000. Who received the stock or what became of it, the record does not disclose. The land was at all times heavily incumbered. There is uncontradicted testimony that Newberry was insolvent in 1911, and indebted to many people. A judgment against him in an action commenced in May, 1913, remains unsatisfied.

While it appears that appellant rendered some services to Newberry after the date of the latter's deed to his wife, the action against Jordan, in which appellant had been employed as attorney, had been tried and decided, and Newberry had apparently accepted the result by paying to Jordan the amount required to repurchase the land and taking a reconveyance from Jordan before that date.

B. F. Jones, an attorney, was associated with appellant in his employment. The action in which appellant's judgment was obtained, was begun by Jones in 1916, on behalf of himself, and as assignee of appellant. Subsequently, Jones dismissed his individual claim, and re-assigned the cause of action to appellant; and the judgment is for the services of appellant alone.

The deed from Newberry to his wife was prepared by a stenographer employed by Jones, at the dictation of the latter. The appellant was not present at the time, but knew of the deed about the time it was made.

Upon the trial of the instant case, appellant offered the testimony of Jones and his stenographer as to certain declarations by Newberry at the time the deed to his wife was executed. Objection was made to these witnesses and their testimony, on the ground that the witnesses were incompetent, and the testimony incompetent, under Section 4608 of the Code of 1897. Proper objection was also made to permitting appellant and Jones to testify to transactions with Mrs. Newberry, based upon Section 4604, Code of 1897. In some instances, these objections

were probably good; but we do not find it necessary to determine the questions so raised.

Without the testimony so objected to, the appellant's evidence tended to show, and, in the absence of proof to the contrary, may be taken as establishing, that, at the times the deeds in question were executed, appellant was a creditor of Newberry's; that he subsequently reduced his claim to judgment, and the judgment was unpaid; that the conveyance from Newberry to his wife covered all of his real estate, and was without consideration and voluntary; that the wife's deed to the daughter of the property in controversy was also voluntary and without consideration; and that the daughter still holds the title to a portion of the property so conveyed. In this situation, the appellees introduced no evidence, but moved for the dismissal of the petition; and the motion was sustained, and judgment rendered against appellant for costs.

It is a firmly established doctrine that, where a voluntary conveyance is made by a husband to his wife, it is presumptively fraudulent as to existing creditors, and the grantee is under the burden of showing that the grantor had sufficient property remaining to pay his debts. *Tyler v. Budd,* 96 Iowa 29; *Seekel v. Winch,* 108 Iowa 102; *Carr v. Way,* 141 Iowa 245; *Woods v. Allen,* 109 Iowa 484; *Kolb v. Mall,* 187 Iowa 193. The same rule applies to a voluntary conveyance made to a child. *Strong v. Lawrence,* 58 Iowa 55; *Campbell v. Campbell,* 129 Iowa 317; *Long v. Garey Inv. Co.,* 135 Iowa 398. It is equally well settled that one who takes title from a fraudulent grantee has the burden of establishing that he purchased in good faith and for a valuable consideration. *Rush v. Mitchell,* 71 Iowa 333; *Long v. Garey Inv. Co.,* supra.

Appellees introduced no evidence, and, therefore, made no effort to show affirmatively either that, at the time of the conveyance by Newberry to his wife, he had sufficient property remaining to pay his debts, or that the daughter Rosalie was a good-faith purchaser for value. They seek to meet the situation by contending: (1) That the record as made shows that Newberry had, after the conveyance to his wife, sufficient property remaining to pay appellant's claim. (2) That appellant, as attorney for Newberry, advised the making of the deed to the

wife, and participated in its making, and that he was thereby estopped to claim that the conveyance was fraudulent as to him. (3) That the property in question was the homestead of Newberry or his wife, and that Rosalie therefore took it free from the claim of the creditors of Newberry.

The first of these contentions is predicated on the fact that the record discloses that the land, aside from that conveyed to Rosalie, was sold or traded to Manny for a stock of goods taken at $20,000. The difficulty with this is that the title to the land was then in Mrs. Newberry, and the proceeds of its sale would belong to her, and not to Newberry; and any effort to subject the stock of goods to the payment of Newberry's debts would have encountered the same situation which appellant is meeting here. The fact that a fraudulent grantee has the property so conveyed to him, or the money for which he sold it, or other property for which he traded it, does not, obviously, establish that the grantor has property remaining with which to pay his debts. The creditor is still confronted by the fraudulent conveyance of the debtor's property. And, if real estate conveyed in fraud of creditors is still in the hands of a fraudulent grantee, a creditor is not deprived of his right to proceed against that by reason of the fact that the same or another fraudulent grantee may have the proceeds of other property so conveyed.

Aside from the fact that no estoppel is pleaded, the second contention is not supported by the record. It does not appear that appellant advised the making of the deed. He and Jones were not partners, although they had offices together and were associated as attorneys for Newberry. The claim upon which appellant's judgment was obtained was for the individual services of appellant. While the suit was originally commenced by Jones for both of them, he dismissed his claim and re-assigned appellant's claim to him, who was substituted as plaintiff, and prosecuted it to judgment. We see nothing in this situation to estop appellant from claiming the conveyance to be fraudulent. We quote from 27 Corpus Juris 481, cited by appellee:

2. FRAUDULENT CONVEYANCES: acquiescence of creditor: evidence.

"The general rule is that the right of an existing creditor to have a conveyance set aside as being in fraud of his rights

is not affected by his mere knowledge of the fraud at the time the conveyance was executed. Such knowledge is valuable only on the question of acquiescence. However, a conveyance in fraud of creditors made with the full knowledge of existing creditors is valid, as far as the creditors who assent to or affirm the conveyance are concerned; but, to estop the creditor from setting up fraud in a conveyance of all his property by the debtor, the holder of the property must allege and prove that the creditor, knowing the purpose of the conveyance, assented to it, and that such assent induced him to accept it."

The evidence does not bring the case within the operation of the rule so announced.

We have examined the record with care, for evidence tending to show that the property in controversy was the homestead of the Newberrys at the time it was conveyed to the daughter.

3. HOMESTEAD: voluntary conveyance: burden of proof.
The property conveyed by Mrs. Newberry to Rosalie consisted, in part, of an 18-acre tract situated within the boundaries of the town of Argyle, which is referred to as the Argyle property. The other land formerly owned by Newberry and included in the conveyances in question consisted of farm lands near Argyle. Jones testified, in substance, that, in 1910 or 1911, the Newberrys lived on the farm about one and a half miles from Argyle, and that the last he knew, they lived at Argyle, on the 18 acres. At one time he testified, "I guess they left the farm in 1911 or 1912;" and at another, he said that they left the farm the spring after the sale to Manny. The deed to Manny was dated April 24, 1913, and it is not shown that the sale to him was made earlier than that date. Appellant testified that, before the trial of the case against Jordan, which was decided July 28, 1911, the Newberrys were living on the farm, and that, at the commencement of the instant case, they were living on the Argyle property. This is the substance of all the testimony relating in any way to the question of homestead. It does not appear therefrom with any degree of certainty when the Newberrys left the farm. Under the record, it may have been at any time between 1911 and the spring of 1914. There is no testimony whatever that they moved from the farm directly to the Argyle property, and the earliest date the evidence shows

them to be living on the Argyle property was at the commencement of this suit, in 1916.

This is not a case of the purchase of a new homestead with the proceeds of the sale of a former one. The Argyle property did not take on the character of a homestead until its actual occupancy as such. *First Nat. Bank of Stewart v. Hollinsworth*, 78 Iowa 575.

It may be conceded that Newberry or his wife had a right to change the homestead from the farm to the Argyle property, and to hold the latter, to the extent of the value of the old homestead, exempt from execution for debts contracted subsequent to the acquisition of the old homestead. Section 2981, Code of 1897; *Furman v. Dewell*, 35 Iowa 170; *Shaffer Bros. v. Chernyk*, 130 Iowa 686. It may also be conceded that Newberry could, by a voluntary conveyance and without consideration, convey the homestead to his wife; and that such conveyance would not be fraudulent as to creditors whose debts were contracted subsequent to its acquisition; and that Mrs. Newberry could thereafter, voluntarily and without consideration, convey the homestead to the daughter Rosalie; and that creditors having no right before such conveyance to subject the homestead to the payment of their debts could not complain. *Delashmut v. Trau*, 44 Iowa 613; *Farmers & Merchants Bank v. Daiker*, 166 Iowa 728. But it must also be conceded that no homestead right in Newberry or his wife could attach to real estate belonging to the daughter, and that neither Newberry nor his wife could acquire a homestead in property previously conveyed to their daughter, by removing from a homestead belonging to them, or one of them, to the property so conveyed. It follows that, if no right of homestead existed in the Argyle property at the time it was conveyed to the daughter, the conveyance was open to attack at the hands of creditors, so far as any claimed right of homestead in Newberry or his wife was concerned. That is to say, they could convey the homestead voluntarily and without consideration, and creditors having no right to subject it to the payment of their debts could not complain; but they could not so convey property not then a homestead, and, by thereafter occupying it, give it a homestead character, and

thereby enable a fraudulent grantee to hold it as against the creditors of Newberry.

The burden was on appellees to establish that the Argyle property was the homestead of the grantors at the time the daughter received the conveyance of it. *First Nat. Bank of Davenport v. Baker*, 57 Iowa 197; *Paine v. Means*, 65 Iowa 547; *First Nat. Bank of Afton v. Thompson*, 72 Iowa 417. The record is entirely lacking in proof that, at the time the Argyle property was conveyed by Newberry to his wife, or at the time it was conveyed by them to Rosalie, it constituted the homestead of Newberry or his wife.

The case is in equity, and triable here *de novo* on the record made below. On that record, we are constrained to say that the appellant was entitled to a decree subjecting the property to the payment of his judgment.

This result affords an illustration of the hazard incurred in moving for judgment at the close of a plaintiff's case in an action triable *de novo* on appeal. The appellees, by so doing, rested their rights upon the evidence of their adversary, and lost the only opportunity available to them to prove affirmatively any defense they might have had; and we are required to determine the merits of the case *de novo* upon the record so made. *Brewster v. Brewster*, 194 Iowa 803.

The cause is reversed and remanded for decree in accordance with the conclusion above stated.—*Reversed and remanded*.

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.

## SUPPLEMENTAL OPINION.

VERMILION, J.—On a petition for a rehearing, counsel for appellee urges upon us that the evidence showed that Helen V. Newberry had been the owner of the land in controversy prior to the conveyance to Jordan, and that, under such circumstances, no presumption that the subsequent conveyance from Newberry to his wife, sought to be set aside in this action, was in fraud of creditors, would arise.

No such claim is made in the pleadings, and it appears from the evidence that the land was sold to Jordan, and by Jordan

conveyed to Newberry, in pursuance of a decree in a case in which Mrs. Newberry was a party.

In this situation, we think the fact, as claimed by appellee, that Mrs. Newberry at one time held the title, even if established by the evidence, placed no additional burden upon appellant.

Petition for rehearing overruled.