GEORGE W. HARRIS, Appellee, v. H. L. BILLS et al., Appellees; TOY NATIONAL BANK, Appellant.

**CONTRACTS:** Proposal and Acceptance—Imposing Implied Law Con-
1 dition. An offer by mail of certain lands and of a certain sum of money in exchange for certain corporate. stock, followed by a timely acceptance by mail *if the land was free of incumbrance*, constitutes a binding contract, as the condition imposed exactly *what the law would impose*; and it is quite immaterial that, in the subsequent dealings between the parties, the party ultimately denying the existence of a contract injected conditions to which the other party did not object.

**CONTRACTS:** Proposal and Acceptance—Belated and Unallowable
2 Withdrawal. An offerer may not withdraw his offer after having received an acceptance thereof, even though the offerer imposed as a condition that the deal should be closed ''at once,'' it appearing that the parties manifestly intended that ''at once'' meant a reasonable time, in view of the circumstances.

**ESCROWS:** Authority of Depositary—Assessment on Corporate Stock.
3 The holder in escrow of corporate stock has no implied authority to pay an assessment on said stock.

Headnote 1: 13 C. J. p. 283 (Anno.) Headnote 2: 13 C. J. pp. 292, 582, 583. Headnote 3: 21 C. J. p. 879 (Anno.)

Headnote 1: 1 A. L. R. 1508; 6 R. C. L. 608. Headnote 2: 6 R. C. L. 611.

*Appeal from Woodbury District Court.*—A. O. WAKEFIELD, Judge.

MAY 10, 1927.

Action in equity: (1) on the cross-petition of the defendant H. L. Bills, to recover for value of property and damages against his codefendant Toy National Bank, alleged to have been caused by violation of an escrow agreement and the conversion of said property by said bank, which was the escrow holder; (2) on cross-petition of the defendant Toy National Bank against H. L. Bills, to recover $2,000, with interest thereon from December 5, 1923, paid by it for special assessment on 100 shares of stock held under the escrow, plus $500 attorney's fees for legal services in defending itself in said cause; (3) on petition of inter-

vention of the Continental National Bank, to recover against the Toy National Bank $2,500, with interest from November 16, 1923, for bank stock procured by the Toy National Bank with which to complete the escrow agreement. The material facts are stated in the opinion. A decree was entered in favor of the defendant and cross-petitioner H. L. Bills against his codefendant Toy National Bank, for $7,400, and a decree was entered in favor of the intervener, Continental National Bank, against the defendant Toy National Bank, in the sum of $2,500, with interest. The Toy National Bank appeals.—(1) *Reversed* on the cross-petition of the defendant H. L. Bills; (2) *affirmed* on the cross-petition of the Toy National Bank against its codefendant H. L. Bills; (3) *affirmed* on the claim of the intervener, Continental National Bank.

*Kindig, Stewart & Hatfield* and *R. H. Burton-Smith,* for appellant.

*Hess, Crary & Marshall,* for plaintiff, appellee.

*Milchrist, Jepson, Pitkin & Jepson* and *S. P. Williams,* for H. L. Bills, appellee.

*Griffin, Griffin & Griffin,* for Continental National Bank, appellee.

DE GRAFF, J.—The plaintiff, George W. Harris, a resident of Paullina, Iowa, was the owner of 100 shares (valued at $5,000) of the capital stock of the Farmers & Mechanics Bank of Spokane, Washington. The defendant H. L. Bills, a resident of California, was the owner of an 80-acre tract of land in Fergus County, Montana. Prior to July 14, 1923, correspondence was had between these parties with regard to an exchange of the respective properties. Nothing came from these preliminary negotiations. On July 14, 1923, the defendant Bills wrote a letter of inquiry to plaintiff, Harris, asking if he still cared to entertain a trade on the basis that had been theretofore considered, namely: the 80 acres in Montana and $5,000 cash for the 100 shares of bank stock. On July 21st, Harris answered Bills by letter, in which he said that, if Bills would send a deed and

1. CONTRACTS: proposal and acceptance: imposing implied law condition.

abstract for the 80 acres to the Toy National Bank of Sioux City, with a draft for $6,000, he would authorize the bank to make the exchange, provided the title to the land was good and free of incumbrance. This offer was not accepted by Bills, and on July 24th, Bills wrote Harris as follows:

"I can put the trade across if you act quickly, but on the basis of the 80 acres and $5,000 cash difference. *.* * If you wish to trade on this basis wire me or write right away and I will undertake to send the deed and money to your bank in Sioux City."

To this offer, Harris wrote Bills, on July 31, 1923, as follows:

"It would be impossible for us to argue this out by letter and ever get anywhere with the deal. As I will not have the time to make a trip to Spokane for some time, have decided to close it upon your offer of $5,000 cash and the 80 free from incumbrance. If you send the papers to the Toy National Bank of Sioux City, Iowa, with the draft as stated in my former letter, they will at once send the stock according to your instructions."

The question at this point is whether the last offer by Bills and its acceptance by Harris as per terms of the Harris letter constitute a contract. Was there a meeting of minds as to the subject-matter of the correspondence? This is the vital and pivotal question.

The plaintiff, Harris, predicated his petition on his right to have his alleged contract with Bills specifically performed. This necessarily involved the proving of mutuality.

It is elementary in the law of contracts that an acceptance must be as broad as the offer, and the acceptance must not be in the nature of a counter proposition, or qualified by the addition of any condition or stipulation not expressed or implied in the offer of which the acceptor wished to take advantage. *Knox v. McMurray*, 159 Iowa 171. If an acceptor does not bind himself to the language of the acceptance, no contract results. *Batie v. Allison*, 77 Iowa 313; *Foshier v. Fetzer*, 154 Iowa 147; *Kleinhans v. Jones*, 15 C. C. A. 644 (68 Fed. 742).

The rule is well stated in *Egger v. Nesbitt*, 122 Mo. 667 (43 Am. St. 596):

" 'In order that an acceptance may be operative, it must be

unequivocal, unconditional, and without variance of any sort between it and the proposal, and it must be communicated to the other party without unreasonable delay. To constitute a valid contract, there must be a mutual assent of the parties thereto, and they must assent to the same thing in the same sense; therefore an absolute acceptance of a proposal, coupled with any qualification or condition, will not be regarded as a complete contract, because there at no time exists the prerequisite mutual assent to the same thing in the same sense.'"

It is also true that an acceptance which in terms is conditioned on what the law implies, is a good acceptance, as it introduces nothing new into the contract. This is a well established principle in the law of contracts. *Morse v. Tillotson & Wolcott Co.*, 253 Fed. 340; *Curtis Land & Loan Co. v. Interior Land Co.*, 137 Wis. 341 (118 N. W. 853); *McGuire Bros. v. Blanchard*, 107 Iowa 490.

It is to be borne in mind that the instant case is not an action for rescission of a contract or for damages based upon an alleged breach of contract. Defendant Bills is the contender, and urges that there was no contract, on the theory that his offer was not accepted.

If there was a contract, resulting from an offer and acceptance, between Bills and Harris, then the former could be relieved from responsibility only by a rescission or by an action for damages for a breach of contract.

Harris closed the deal. He said so when he wrote his letter of acceptance to the offer of Bills. He has never changed his position in this particular. Furthermore, after Bills received the letter of acceptance, he confirmed the contract by mailing the necessary papers and check, as per his understanding with Mr. Harris, and "in accordance with his [Harris's] letter." This is Bills's own language. But it is claimed by Bills that the words "free of incumbrance," contained in the acceptance of Harris, introduced a condition which created a new offer. It is clear that this cannot be so. An agreement to convey, in the absence of any reservation or exception therein, requires the vendor to convey a marketable title, free of incumbrance. The legal effect of a contract to sell and convey land is to require the vendor to make a good title, and every purchaser of real estate is entitled to a marketable title, free from incumbrance and de-

fects, unless he expressly stipulates to accept a defective title. *McGuire Bros. v. Blanchard,* supra. The adding of the phrase "free of incumbrance" did not affect the acceptance. That phrase was implied by law, and the rights of the plaintiff, Harris, are the same under the law as if the phrase had not been used. We reach the conclusion, therefore, that there was a valid and enforcible contract in this case.

Other evidence may be recited at this point, bearing on the subsequent events, which not only has to do with the relationship of Harris and Bills, but also with the Toy National Bank, a defendant in the original cause and a cross-petitioner to its codefendant Bills after his appearance in this action.

On August 9, 1923, Bills wrote two letters: one to the Toy National Bank and the other to Harris. In the letter to the bank he stated that he was inclosing abstract of title to certain Fergus County, Montana, land, and a warranty deed to said land, in which George W. Harris was named grantee, and also a check for $5,000, payable to Harris. The bank was instructed by Bills as follows:

"You may deliver the abstract, deed, and check of $5,000 to Mr. George W. Harris upon delivery to you to be delivered to the writer [Bills] free of incumbrance, one hundred shares of capital stock of the Farmers & Mechanics Bank of Spokane. At the time of delivery of said stock kindly see to it that it is properly assigned in blank and witnessed. I am mailing you these papers with the understanding that the deal will be closed at once as per my understanding with Mr. Harris as in accordance with his letter."

The letter to Harris by Bills informed him that he had forwarded to the Toy National Bank, "as per your letter," the following:

"Deed to the eighty acres of land near Denton, Montana, abstract of title, check for $5,000, check for $2.50 to cover revenue stamps on deed, with instructions that they deliver the above to you upon delivery to the writer of one hundred shares of the capital stock of the Farmers & Mechanics Bank of Spokane free of incumbrance."

It may also be observed that in the letter to the bank from Bills he stated that the 80-acre tract is clear of all incumbrance "except taxes for 1923 which are not payable until late this fall,

and I also have made it subject to a lease for a term of two years to one Kottas." In the letter of the same date from Bills to Harris the same facts are pointed out to Harris. In this letter he also said:

"Kindly write your banker about the exceptions mentioned, as no doubt they are acceptable to you and in accordance with our understanding. If you prefer, I think Mr. Kottas would accept a one year lease, namely, for the crop season of 1924, subject to another year."

These statements cannot be considered as counter propositions. Furthermore, Harris never objected to these matters, which must be viewed as waived by Harris. There was a completed contract when these letters were written.

On September 19, 1923, Bills wired the bank:

"Offer of George W. Harris stock in Farmers & Mechanics Bank of Spokane withdrawn. Return cash, deed, and all papers to me immediately."

This withdrawal could not avail Bills. He took no steps to rescind the contract with Harris, and he is not now in a position to complain of the failure of the escrow holder or of Harris to comply promptly with the terms of the accept-

**2. CONTRACTS: pro-posal and ac-ceptance: belated and unallowable withdrawal.** ance that the bank would "at once forward the stock according to your instructions." The phrase "at once" was not a material part of the acceptance. It was simply a matter of suggestion in relation to the handling of the paper. Furthermore, the law presumes, unless the contrary is expressed, that performance is to be made "at once." The law implies, upon the acceptance of an offer, that the performance shall be made at once. *Grimsrud Shoe Co. v. Jackson*, 22 S. D. 114 (115 N. W. 656). The phrase "at once" is not construed strictly according to its literal meaning. It means within a reasonable time, in view of the attending circumstances. It does not mean instantaneously, but, like the phrase "as soon as possible," means within such reasonable time as is ordinarily required for the doing of the particular thing. *Lucas v. Western Union Tel. Co.*, 131 Iowa 669.

Again, it may be stated that this action is not based upon rescission or for damages, and, if the papers were not exchanged within a reasonable or proper time, Bills might have had ground

for a rescission or damages; but this phase of the case is not involved.

Did Bills have the right to withdraw his offer, under the instant facts and circumstances? In view of our ruling that there was a completed contract, the question must be answered in the negative. Bills predicates his cross-petition against his codefendant Toy National Bank, on the theory of conversion.

It appears from the record that, at the time of the correspondence in question, and at the time the Toy National Bank received from its codefendant Bills the check for $5,000, one certificate of 50 shares of the bank stock was under pledge by the plaintiff, Harris, to the Farmers Loan & Trust Company of Sioux City, and the other certificate of 50 shares of stock was under pledge, as collateral, to the Continental National Bank, defendant and intervener herein. It was necessary that this indebtedness of Harris's to the pledgees should be paid, before the stock was released to the escrow holder for delivery to Bills. The Toy National Bank sent the check for collection, on the 16th day of August, 1923, to the Security Trust & Savings Bank of Los Angeles. The money was collected by the Toy National Bank. On the date that the bank sent the check for collection, it wrote Bills that it would be necessary to have the money on deposit, and that the bank was sending the check for collection. Bills was also told in that letter that the Toy National Bank would not guarantee the stock free of incumbrance. On August 20th, this letter was acknowledged by Bills, and in said letter he gave further directions with reference to the certificates of stock and the method of handling same. In conclusion, he said: "Hurry the matter along at your earliest convenience." This evidence clearly indicates a waiver on the part of Bills to the method of procedure adopted by the escrow holder.

On August 25th, the Toy National Bank wrote Bills with respect to the handling of this stock, and that it intended to have the stock transferred to a local party, to determine whether or not it was free of incumbrance. In this manner the stock was transferred. On August 27th, the Toy National Bank sent Certificate of Stock No. 302, for 50 shares, to the Security State Bank of Spokane, directing that a new certificate issue in the name of Louise Bristow, one of the stenographers of the Toy National Bank, and requested that the old certificate be presented to the

Farmers & Mechanics Bank of Spokane for transfer and the return of the new certificate to the Toy National Bank. On September 5th, the new certificate No. 316 was sent to the Toy National Bank. This was prior to the withdrawal of the offer by Bills.

It is also shown that, a short time subsequent, the other pledgee, Continental National Bank, sent its certificate of stock to the Toy National Bank, for the purpose of obtaining $2,500 held by the Toy National Bank in escrow, to be applied on the indebtedness of Harris to the Continental National Bank. It further appears that the Toy National Bank did not pay the Continental National Bank for this certificate, presumably by reason of Bills's attitude in the matter and his wire of withdrawal.

We now turn to the issues as defined by the numerous pleadings in this cause. Harris filed his petition for specific performance October 24, 1923. Of this fact the Toy National Bank notified Bills by letter, and asked for further instructions. The letter concludes:

"In the event you wish to direct the bank to comply with the conditions of the escrow, that is to say, to receive and send you the shares of stock in the Farmers & Mechanics Bank of Spokane and to deliver to George W. Harris the $5,000 and the deed to the land you sent to the bank to be delivered to him, you will please send night letter by wire before further costs or damages are awarded in the district court."

On November 16th, the Toy National Bank filed its answer, setting out the escrow agreement, and asking the court to determine its obligation as an escrow holder. The cause was submitted to the court in November, 1923; but at that time, the defendant Bills was not under the jurisdiction of the court, as he was not noticed to appear until the January, 1924, term. In the decree entered November 16, 1923, from which no appeal was taken, the court determined that there was a contract between Harris and Bills for the exchange of property, and that the contract had been completely performed on the part of Harris and on the part of Bills, and that nothing remained to be done by the Toy National Bank, as escrow holder, as agent for both of these parties, but to deliver to the respective parties their respective properties. The Toy National Bank was ordered to

deliver to the defendant Continental National Bank the sum of $2,500, which sum was to be credited by the Toy National Bank upon the indebtedness of Harris to the Continental National Bank, and the Toy National Bank was further ordered and directed to retain from the funds in its hands, as escrow holder, the sum of $2,500, to be applied by it upon the indebtedness of Harris on the other certificate of stock.

It was further ordered that the escrow holder deliver to the plaintiff, Harris, the warranty deed in its hands, and deliver to the defendant Bills the certificates of stock (100 shares) of the Farmers & Mechanics Bank at Spokane, properly indorsed to the defendant Bills; but the Toy National Bank was directed to deliver said shares of capital stock only after the deed to the real estate in Montana should have been delivered to Harris, and by Harris placed of record, and after abstract of title was continued, showing good and merchantable title in Harris. It was further ordered that the Toy National Bank should not deliver the certificates of stock to Bills if Bills had conveyed or incumbered the said real estate, contrary to the terms of his contract with Harris.

After the filing of said decree, and on December 11, 1923, defendant Bills appeared in said cause and filed his answer and cross-petition. He asked for judgment against the Toy National Bank for $5,000, with interest thereon from September 10, 1923, and for an order directing the Toy National Bank to deliver to Bills, unrecorded, the warranty deed executed by Bills and left in escrow with the Toy National Bank, together with the abstract of title thereto, and upon its failure so to do, to have judgment against the Toy National Bank for $4,000.

On January 4, 1924, the Continental National Bank filed its petition and motion praying that the former decree be amended so as to provide that a judgment *in personam* be entered against the Toy National Bank for $2,500, and on April 14th filed its petition of intervention praying for $2,500, with interest, and that the said amount be entered as a judgment against the Toy National Bank, and that an injunction issue, ordering and commanding the Toy National Bank to pay the same. On May 8, 1924, the plaintiff, Harris, dismissed his petition. On May 12th, the Toy National Bank filed its substituted answer to the cross-petition, and prayed that the judgment and decree entered on

the 16th day of November, 1923, be reaffirmed, and that the Toy National Bank recover $2,000, with interest paid by it, as a special assessment on the 100 shares of stock, and that the same be a lien upon the stock, and that the Toy National Bank have and recover from its codefendant Bills $500 attorney's fees and court expense caused the escrow holder in the premises. On May 20, 1924, the defendant Bills filed his reply to the answer of his codefendant Toy National Bank to the cross-petition of Bills against said bank. In this reply Bills alleges that whatever payment, if any, was made by the Toy National Bank as an assessment upon the shares of stock in question was made by said bank without his authority, and that, if the same was paid by the bank, it was done to protect its own interest, and not the interest of Bills, and that whatever legal expense or court costs were caused said bank by reason of the litigation were by reason of the wrong committed by the said bank. On May 24, 1924, the Toy National Bank filed its answer and cross-petition to the petition of intervention of the Continental National Bank.

On these pleadings, trial was had May 28, 1924, and on August 31, 1925, judgment was entered in favor of Bills on his cross-petition against the Toy National Bank in the sum of $7,400, with 6 per cent interest from September 10, 1923, and costs, and that the cross-petition of the Toy National Bank against Bills be dismissed with prejudice. The decree also determined that there never was a contract entered into between Bills and the plaintiff, Harris, and that the said Bills duly rescinded his offer before an acceptance by Harris. It was further decreed that the judgment entered on November 16, 1923, on the issues between Harris and the Toy National Bank is not binding upon the cross-petition of Bills, as the court had no jurisdiction over said Bills at said time; that the acts of the defendant Toy National Bank with relation to the land in question amounted to a conversion thereof; and that said bank is liable to Bills for the value of said land, which was in the sum of $2,400.

On September 4, 1925, the Toy National Bank filed its amended and substituted answer to the petition of intervention of the Continental National Bank, and on September 8th, the Continental National Bank moved to strike the said substituted answer. On September 15th, the court sustained the motion, and on September 25th, judgment was entered against the Toy Na-

tional Bank in favor of the Continental National Bank in the sum of $2,500, with interest at the rate of 6 per cent. It is from these judgments and decrees that the instant appeal is taken by the Toy National Bank.

It is clear that the judgment and decree entered in favor of the Continental National Bank must be affirmed. It is clear that the finding of the trial court that there was no contract between Harris and Bills is erroneous, and that the judgment in favor of the defendant Bills in the sum of $7,400 must be reversed.

With respect to the claim of the Toy National Bank for attorney's fees and costs in defense of the suit involved in the escrow agreement, we find no evidence of the value of said services or the expenses incurred. It was its own defense that it was making, and under the circumstances of the case, we do not find sufficient warrant to justify the allowance of this claim.

With respect to the assessment made upon the bank stock during its possession by the escrow holder, we fail to find competent evidence that a valid assessment had been made, and it is to be remembered that, although a pledgee of

3. ESCROWS: authority of depositary: assessment on corporate stock.

stock may rightfully pay a valid assessment (*Mabb v. Stewart*, 147 Cal. 413 [81 Pac. 1073]; *Corbin Bank. Co. v. Mitchell*, 141 Ky. 172 [132 S. W. 426, 31 L. R. A. (N. S.) 446]), an escrow holder is not in the same position. He is in no sense liable for such an assessment, nor is he liable for failure to pay the same. The Toy National Bank was not the agent of Bills for this purpose, and it had no authority from Bills or from anyone to pay the assessment,—if it be conceded, for the purpose of the argument, that it was a valid assessment. Bills had the option to pay or not to pay the assessment, had he been duly notified. It was for Bills to determine whether he desired to protect the investment, and it is not for an escrow holder to determine that question or exercise that option.

We hold that the escrow holder paid the assessment at its peril, and consequently it is not in a position to recover the payment. It follows, therefore, that the decree in these two particulars was correct, and as to these two items the judgment is—
*Affirmed.*

The decree on the cross-petition of the defendant H. L. Bills is—*Reversed.*

The decree in favor of the Continental National Bank, intervener, is—*Affirmed.*

A decree shall be entered accordingly.

EVANS, C. J., and STEVENS, ALBERT, and MORLING, JJ., concur.