A. C. JOHNSTON, Appellant, LENA JOHNSTON, Administratrix, Substituted Appellant, v. FEDERAL LAND BANK et al., Appellees.

No. 45220.

AUGUST 6, 1940.

McCulla & McCulla and Ralph Maclean, for appellant.

Herrick & Ary, Leon W. Powers, and F. R. Boyles, for appellees.

SAGER, J.—We recite briefly the substance of the facts upon which this case turns. In 1933 Johnston, through the Cherokee County National Farm Loan Association, of which one Bell was secretary-treasurer, made application for a loan of $15,000 from the Federal Land Bank of Omaha, hereafter referred to as "bank", and the Land Bank Commissioner, herein designated "commissioner." The loan was to be secured by a first mort-

gage on the incumbered land. The application, after being approved by the loan association, was sent to the defendant bank which, on January 26, 1934, approved a loan in the sum of $10,500 to be made by the bank, and $2,500, by the commissioner. The bank sent to Bell, mortgages and notes filled out except as to signature. These, being signed by Johnston and wife, were placed of record by Bell, this without any direction or authority from the bank.

Under date of June 18, 1934, Bell, as secretary-treasurer, was notified that the loan had been rejected. With this notification went the mortgages, and releases of them dated June 20, 1934. Johnston was notified by Bell of the cancellation but he never called for the papers nor appeared to show any further interest in them. His attorneys were likewise told of the rejection of the loan and the return of the notes and mortgages with the releases. They, like their client, manifested no interest therein. Following the rejection of the loans as mentioned, an effort was made to have the application reinstated. What these efforts were does not appear but the result was that the application was reinstated as of March 20, 1936. Johnston died 3 days later and that of necessity made impossible further action.

But, to go back a little. Following the rejection of the loan in June of 1934 and on August 29, 1935, Johnston filed his petition in this case demanding recovery of the $13,000 which he alleged to be the value of the equity in his land—lost, as he claims, because of the failure of the bank and the commissioner to consummate the loan. It was charged that Johnston had an oral agreement with the holder of the $22,000 mortgage on Johnston's land, whereby the mortgagee agreed to accept $12,000 in full satisfaction of a decree of foreclosure then standing on the records of Cherokee county. Bates, superintendent of banking, in his capacity as receiver and holder of the decree of foreclosure against the Johnston land, entered into a stipulation to accept $12,000 in satisfaction of the debt if in a suit Johnston was then contemplating, the latter should "succeed in compelling the said Federal Land Bank and said Commissioner to consummate said loan by the actual payment

of the amount applied for in the loan.'' This stipulation is dated December 17, 1934. It is to be recalled that Johnston died March 23, 1936, three days after his application had been reinstated. On March 3, 1937, Bates, as superintendent of banking, plaintiff in the foreclosure suit, filed an application against the administratrix and heirs of Johnston asking among other things that special execution issue. Defendants answered that the application was premature; that under the stipulation, Bates was to wait until the pending action was decided. By an amendment to his application Bates alleged that the action commenced by Johnston was still pending but had never been tried ''although more than three years has already elapsed since the date of making said stipulation. * * * That owing to the long, unreasonable and unwarranted delay occasioned by said litigation, which has become dilatory in character, plaintiff is entitled to have said stipulation terminated.''

On October 27, 1937, a trial was had on the issues thus presented and the court ordered that defendants execute a deed to plaintiff Bates and failing therein, that the clerk be authorized to make such deed as commissioner. The deed was executed by the clerk sometime before December 31, 1937.

Many errors are assigned but we find it necessary to discuss but a few. Plaintiff's first complaint is that the court erred in directing a verdict on defendants' ground that ''the undisputed evidence fails to show that any contract existed which obligated the Federal Land Bank to make a loan to the plaintiff's decedent.'' In support of this, plaintiff cites Federal Land Bank v. Warner, 42 Ariz. 201, 23 P. 2d 563, 290 U. S. 620, 54 S. Ct. 130, 78 L. Ed. 541, 292 U. S. 53, 54 S. Ct. 571, 78 L. Ed. 1120, 91 A. L. R. 380.

Division II of the argument presents the same question on ground No. 2 of defendants' motion which is stated in a little different form. Federal Land Bank v. Warner, supra, is again cited but we fail to see its applicability. Division III of the motion to direct presents the same proposition in still different form in this language: ''The undisputed evidence shows that the parties specifically agreed that such negotiations were not

to result in a binding contract, but were only to be tentative and preliminary, and that the Federal Land Bank should have the right at any time to withdraw from the negotiations.''

Appellant asserts that the stipulation of the application, to which reference will be made, was illegal and void and beyond the power of the bank to make under its charter. She cites section 771, Title 12, chapter 7, U. S. Code; Meek v. Wilson, 283 Mich. 679, 278 N. W. 731; Nute v. Insurance Company, 6 Gray (72 Mass.) 174; section 733 of Title 12, chapter 7, U. S. Code. We do not read these citations to the effect claimed for them. It is clear that all parties understood that everything that had been done prior to the death of Johnston was with the purpose and intention of coming to terms on the loan in contemplation of the parties. Much is said in plaintiff's argument about a completed contract to make a loan. We take no time to discuss this because the record does not sustain it. At the very time Johnston died, the application had been reinstated as the result of his efforts or someone in his behalf to bring about that result. Certainly if he had believed that he had a completed contract which would afford the basis for a claim for damages when the approval of the loan was withdrawn in June 1934, he would not have been concerned with a reinstatement. Moreover Johnston's application expressly stipulated:

''I agree that approval of this application, if granted, may be withdrawn by the Bank or Commissioner any time before the loan is finally made without any liability or obligation to me of any nature.''

But it is said that the mortgages were placed of record thus completing the contract. There is nothing in the record to indicate that this was done with the knowledge, consent or approval of the defendants or of anyone acting in their behalf. The notes and mortgages, with releases of the latter, were returned two days after they had been sent to the bank by Bell. There is nothing in the record to warrant the thought that Bell was acting as agent for anyone but Johnston. Throughout appellant's argument runs the thought that the acceptance of the

loan in 1934 resulted in a completed agreement. We have already pointed out that plaintiff's application provided that the "approval of this application * * * may be withdrawn * * * at any time before the loan is finally made * * *." Even without this stipulation, plaintiff's case must fail because the mere approval of the application did not make a contract. See Cedar Rapids Co. v. Fisher, 129 Iowa 332, 105 N. W. 595, 4 L. R. A., N. S., 177; First Tr. JSL Bk. v. Diercks, 222 Iowa 534, 267 N. W. 708; Starry v. Starry & Lynch, 212 Iowa 274, 234 N. W. 281; Harris v. Bills, 203 Iowa 1034, 213 N. W. 929; Petersen v. Jensen, 189 Iowa 400, 177 N. W. 74.

▬ Another contention of the appellant is that the provision of the application above quoted was "void because it was an attempt to deprive the courts of jurisdiction to hear and determine any and every dispute between the bank and Johnston." We cannot read this provision of the application to any such conclusion. Oskaloosa Sav. Bk. v. Mahaska County St. Bk., 205 Iowa 1351, 219 N. W. 330, 60 A. L. R. 1204, and other authorities do not support plaintiff's contention. Again it is said that this provision "was a waiver of rights *in futuro* and was not pleaded defensively and not being based upon a consideration was void." It would seem to require no argument to demonstrate, in the light of what has gone before, that this contention is without merit. We content ourselves here with setting out the authorities which plaintiff cites. They do not support her. See section 11209, 1939 Code of Iowa; Howe v. Sioux County, 180 Iowa 580, 163 N. W. 411; Ford v. Ott, 186 Iowa 820, 173 N. W. 121; Schworm v. Reserve Society, 168 Iowa 579, 150 N. W. 714, Ann. Cas. 1917B, 373; Dolan v. Newberry, 200 Iowa 511, 202 N. W. 545, 205 N. W. 205; Gurnett v. Ins. Co., 124 Iowa 547, 100 N. W. 542; Hollis v. State Ins. Co., 65 Iowa 454, 21 N. W. 774.

Having found that no completed contract was entered into, we are under no necessity of discussing other contentions of the parties. We find that the trial court was right in directing verdict for the defendants and its judgment is affirmed. Ap-

844

pellant's motion to strike amendment to abstract is overruled. —Affirmed.

RICHARDS, C. J., and OLIVER, MITCHELL, MILLER, HALE, HAMILTON, STIGER, and BLISS, JJ., concur.