## ROMANS v. MADDUX *et al.*

1. **Fraudulent Conveyance :** HUSBAND TO WIFE : CONSIDERATION : EVIDENCE. A husband may discharge a *bona-fide* indebtedness to his wife by a conveyance of property to her, and neither prior nor subsequent creditors can question the transaction. ( *Jones v. Brandt,* 59 Iowa, 332.) But such a transaction cannot be sustained without satisfactory evidence that actual contractual relations existed between the husband and wife with reference to her separate money or property, and the evidence on that point in this case is indefinite, confused and contradictory ; and, upon consideration of the whole case, *held* that the property remained in equity in the husband, and was subject to his debts.

2. ——— : VOID AS TO SUBSEQUENT CREDITORS. A conveyance not made in good faith and for a good consideration is voidable as to subsequent as well as to existing creditors. ( See cases cited in opinion. )

*Appeal from Boone District Court.* — HON. J. L. STEVENS, Judge.

### FILED, MARCH 7, 1889.

THIS is an action in equity, by which the plaintiff, who is a judgment creditor of the defendant Thomas A. Maddux, seeks to subject certain real estate, the legal title to which is in the defendant Ezra T. Maddux, to the payment of plaintiff's judgments. There was a hearing upon the merits, and a decree for the plaintiff. Defendants appeal.

*E. L. Greene,* for appellants.

*Crooks & Jordan* and *Shaw & Kuehnle,* for appellee.

ROTHROCK, J.—I.    In the year 1869 the defendant Thomas A. Maddux was the owner of the land in controversy. He held the legal title to the greater part of it, and had purchased the remainder, but had not then acquired a deed for the same. There was a mortgage

1. FRAUDULENT conveyance: husband to wife: consideration: evidence.

upon that part of the land to which he held the legal title. An action for the foreclosure of the mortgage was pending, and on the eighteenth day of September, 1869, three days before the decree of foreclosure was entered, Thomas A. Maddux conveyed the land to Elizabeth Maddux, his wife, by a deed with covenants of general warranty, excepting as to said mortgage. Elizabeth Maddux died intestate in March, 1870, leaving several children, the oldest of whom was the defendant Ezra T. Maddux, who was then about twenty years of age. In April, 1871, Thomas A. Maddux conveyed an undivided one-third interest in the land to one Gamble by a deed of general warranty. In 1873, Gamble made a quitclaim deed of his interest in the land to the defendant Ezra T. Maddux. In 1884, Thomas A. Maddux and the surviving children of Elizabeth Maddux, except E. T. Maddux, by a quitclaim deed, transferred all of their interest in the land to Ezra T. Maddux. By these several conveyances and transfers the complete legal title of the land is held by Ezra T. Maddux.

It is claimed by the plaintiff that all of these conveyances and transfers were without consideration, fraudulent and void as to the creditors of Thomas A. Maddux, and that the title held by Ezra T. Maddux is a secret trust, and that as to said creditors the land is the property of Thomas A. Maddux, and should be subjected to the payment of his debts. On the other hand, the defendants contend that the conveyances were made in good faith, and for valuable considerations, and are really what they purport to be. There is possibly this exception to this claim, which is that the quitclaim deed made to Ezra T. Maddux by the other children of Elizabeth Maddux, deceased, was without consideration, but was made in good faith, to enable Ezra T. Maddux to adjust and extinguish certain tax claims upon the land, or to procure a loan of money thereon. It is conceded that Thomas A. Maddux is insolvent. It appears from the evidence that after the death of Elizabeth Maddux the defendant Thomas A. Maddux, and all of his children, remained in Boone county, and in possession

of the land, upon which there was a large amount of timber. They had a saw-mill, and cut and sawed the timber from the land, and sold lumber, railroad ties, wood, etc. In 1873 the family removed to Crawford county, and rented a large farm, and farmed quite extensively. Thomas A. Maddux appeared to be the ruling spirit in this enterprise. He took the active management of affairs, and did the purchasing for the family, and accounts were run with merchants in his name. The claims upon which the plaintiff's judgments are founded arose by the purchase of agricultural implements, cultivators, plows, wagons, lumber and general hardware for use upon the farm in Crawford county. Thomas A. Maddux made the contracts for the property, and gave his obligations therefor. The purchases were made in 1874 and 1875, and soon thereafter were put in judgment, and execution was levied upon personal property on the farm. Ezra T. Maddux made claim to the property levied upon, and a trial of the right of property was had, which resulted in judgment against the plaintiff herein. In that suit a wagon, which the plaintiff had sold to Thomas A. Maddux, was claimed by Ezra T. Maddux, and it was awarded to him. When payment was demanded for the property purchased, Ezra T. Maddux claimed to own all the personal property. He claims in his testimony in this case that, when he went to Crawford county, he took with him, as his own property, "nine head of horses and mules, eight cows, three two-horse wagons and harness."

We recite these facts in connection with the origination of these judgments, not as directly affecting the title to the land in controversy, but as showing the general method pursued by the defendants in the prosecution of their business. It would seem that they ought to have paid the debts made necessary by the purchase of implements and machinery with which to carry on their business; and their conduct in this regard tends in in some degree to show that their transactions and claims, with reference to the property of the family, have

not been characterized by that fairness which honest dealing demanded.

But we recur to the matter of the land in Boone county. After farming a few years in Crawford county, Thomas A. Maddux, with all of his family excepting Ezra T. Maddux, removed to the territory of New Mexico. Ezra T. Maddux remained in Crawford county until about the year 1885, when he removed to the state of Nebraska. Before removing, he sold a farm which he owned to H. C. Laub. In this transaction he paid a judgment which Laub held against Thomas A. Maddux for goods purchased to carry on the Crawford county farming operations, above referred to. Soon after his removal to Nebraska, Thomas A. Maddux returned from New Mexico and took possession of the land in controversy, built a dwelling house upon it, and now resides thereon. It is claimed by the defendants that the conveyance from Thomas A. Maddux to Elizabeth Maddux was founded upon a valuable consideration, which consisted of money paid to him which she owned in her own right, and which she acquired from the estates of her father and of her mother. The account given of this separate estate by Thomas A. Maddux is not at all satisfactory. It is indefinite in time, place and circumstance, and his testimony in regard thereto is confused and absolutely contradictory. Besides, he made the conveyance of the land to his wife three days before the decree of foreclosure, and after he had sustained large losses in some business enterprises. It is correct, and this court has frequently held, that a husband may discharge a *bona-fide* indebtedness to his wife by a conveyance of property to her, and neither prior nor subsequent creditors can question the transaction. *Jones v. Brandt*, 59 Iowa, 332, and other cases. But such a transaction cannot be sustained without satisfactory evidence that actual contractual relations existed between the husband and wife with reference to her separate money or property. And then the subsequent acts and declarations of Thomas A. Maddux with reference to the land in controversy are inconsistent with

the claim that the conveyance of the property to his wife was a good-faith transaction. He repeatedly claimed the land as his own. He brought actions in his own name for alleged trespasses upon it, and did other acts wholly inconsistent with any other claim than that the conveyance was a mere transfer to avoid the payment of his debts. It is strenuously contended that these acts and declarations are incompetent evidence. It is true, the grantor of real estate cannot be heard to slander and impeach the title which he has undertaken to convey. But his conduct in reference to the land is a most important fact, as impeaching his testimony, so far as it pertains to the good faith and honesty of the transaction. But the evidence impeaching the claim now made by Ezra T. Maddux is not limited to the acts and declarations of his father. It is shown, by evidence which we regard as clear and convincing, that when Ezra T. Maddux sold his Crawford county farm to Laub he stated that the land now in controversy belonged to his father, and was put in his (Ezra's) name to prevent creditors from getting a lien upon it, and that, in the event of his father's death, it was to be divided equally among the children; that his father was the real owner of the land. Besides this, the claim that Ezra T. Maddux was the owner of nearly all the personal property in use upon the farm rented in Crawford county is not at all credible. He was then a very young man, but little past majority, and that he should have accumulated so much in so short a time is not to be credited without more satisfactory evidence than has been offered in this case. A careful perusal of all the evidence in the case leads us to the conclusion that Thomas A. Maddux is the real owner of the land in controversy. There are many facts and circumstances in evidence aside from those above recited which point to this conclusion. It is to be understood that we do not detail all the evidence in an equity case tried in this court upon the facts. Counsel for appellants appear to rely with confidence on the case of *Caffal v. Hale*, 49 Iowa, 53. It is claimed that the evidence of fraud in that case is

stronger and more convincing than in this, and that this court refused to find that the transaction was fraudulent. It is scarcely necessary to say that the controlling facts in the two cases are not alike. Indeed, in cases of this kind, regard can be had only to general rules, because, in the very nature of things the facts cannot be the same, either in substance or in detail.

II.   It will be observed that the plaintiff was not a creditor of Thomas A. Maddux when the said Maddux made the conveyance of the land to his wife.

2. ——: void as to subsequent creditors.

Plaintiff is a subsequent creditor. But, as we view the facts of this case, this is not a material consideration. If it is made to appear that the conveyance was not in good faith, and for a good consideration, it is voidable as to subsequent as well as to existing creditors. *Harrison v. Kramer*, 3 Iowa, 543; *Lyman v. Cessford*, 15 Iowa, 229; 1 Story, Eq. Jur., secs. 353, 356. In our opinion, the decree of the district court should be                    AFFIRMED.