HATTIE P. TYLER, Appellant, v. J. L. BUDD AND ANDREW COULTHARD, Sheriff.

**Fraudulent Conveyance.**   It is claimed that a husband and a father each gave the daughter and wife a sum of money when she married.   The wife invested this money in a firm in which she was not and her husband was a partner, which money he subsequently withdrew from the firm.   About the time a judgment was rendered against the husband she recorded a deed from him to her. There was no evidence that the husband promised to repay his wife.   She still claims to hold her investment in said firm.   *Held*, while the relation of debtor and creditor may exist between the husband and said firm, it does not exist between husband and wife and if said deed was made in consideration of the sum which he drew out from said firm, it is void against his creditors.

SAME.   The husband erected a building on the land which he had so conveyed to his wife.   He paid for it in part with lots belonging to his wife, no contract being made between husband and wife about the application of her lots.   At a subsequent sale under mechanic's lien foreclosure to make the amount still unpaid on said building, the husband purchased the realty as trustee for his wife.   *Held*, this was merely a redemption by the husband, and vests no title in the wife as against his creditors.

MORTGAGED PROPERTY: SALE ON EXECUTION.   Where mortgaged property is bid in by a judgment creditor of the mortgagor, the amount which should be applied on the judgment is the bid minus the amount which the creditor deposits with the clerk, to pay the mortgage, under chapter 117, Twenty-first General Assembly.

*Appeal from Harrison District Court.*—HON. A. VAN WAGENEN, Judge.

FRIDAY, OCTOBER 18, 1895.

Suit in equity to restrain an execution sale of certain real estate levied upon as the property of one E. G.

Tyler, to remove a cloud upon plaintiff's title created by a certain judgment in favor of Budd against said Tyler, and for other relief. From a decree dismissing plaintiff's petition in part, she appeals.—*Affirmed.*

*J. S. Dewell* for appellant.

*J. W. Barnhart* and *Roadifer & Arthur* for appellees.

Deemer, J.—On the eighteenth day of September, 1891, defendant J. L. Budd obtained a judgment in the district court of Harrison county, Iowa, against E. G. Tyler and P. Caldwell for the sum of five hundred and fifty-eight dollars and costs. Execution issued on this judgment, which on the eighth day of April, 1892, was levied upon the real estate in controversy, the title to which was apparently in the name of plaintiff or E. G. Tyler, trustee. This suit is to enjoin a sale under this execution; the plaintiff claiming to be the beneficial owner of the land, the legal title being in her name or in the name of her husband as trustee for her use and benefit, by reason of a conveyance to her from her husband by deed, of date January 3, 1887, and a sheriff's deed of date February 5, 1891, from the sheriff of Harrison county to E. G. Tyler as trustee; the trust being for her use and benefit. The answer of defendants alleges that the conveyance of January 3d was without consideration, fraudulent, and void, and that the transaction with reference to the sheriff's deed amounted to no more than a redemption of the premises from sheriff's sale. The plaintiff, for reply, alleges that defendant's judgment has been fully satisfied by levy and sale, and that the execution levied upon the land in controversy is void. On the issues thus joined, the case was tried to the court, and decree passed dismissing plaintiff's petition, and she appeals.

We gather the following as being the controlling facts in the case: About the year 1881, E. G. Tyler, the husband of plaintiff, began loaning money belonging to defendant Budd in Harrison county, Iowa. Tyler negotiated the loans, secured an application from the borrower, took notes and mortgages from the applicant, and forwarded them with an abstract of title to Budd for his acceptance. If the loan was accepted, Budd forwarded the money to Tyler, and the loan was consummated. Tyler collected his commissions from the borrower. In time, however, these rules were somewhat relaxed, and Budd, in some cases, remitted money to Tyler upon his (Tyler's) statements with reference to the nature of the proposed loan, and his recommendations as to the responsibility of the borrower. In August, 1883, Tyler procured from Budd eight hundred dollars, upon the representation that he had effected a loan of that amount to one Jerome South. He forwarded to Budd a note and interest coupons, with mortgage to secure the same, purporting to be executed by South. The interest on this so-called "loan" was kept up until the year 1887; but in May or June, 1888, Budd discovered that the South papers were fictitious, false, and forged, and that the pretended mortgage did not cover land in Harrison county, and that it had not been recorded, the certificate of the recorder being forged. In July of 1888, Budd went to Harrison county for the purpose of adjusting his matters with Tyler, and, on the seventh of July, received from Tyler some notes upon which one P. Caldwell was security, covering the amount of the South loan, as well as some other matters due Budd at that time. The judgment on which the execution was issued, which is attacked in this case, was rendered on one of these notes. In September, 1883, Tyler was married to the plaintiff, a daughter of P. Caldwell; and it is claimed that he gave her at the time the sum of eight

hundred dollars, in virtue of an agreement made with her father to give her an amount equal to the sum the father gave. Plaintiff claims that she invested this money in the stock of a firm known as E. G. Tyler & Co., shortly after she received it from her husband; that thereafter, and prior to January 3, 1887, Tyler drew out from said firm the sum of seven hundred dollars; and that, on the last-named date, Tyler made a deed of the land in controversy, with some other lots, to satisfy the amount so drawn out by him. This deed was not recorded until September 18, 1891, the day on which Budd obtained his judgment. The title by sheriff's deed was derived in this wise: Van Scoy Bros. erected an office building upon the property in controversy, and received as part payment therefor two lots belonging to plaintiff, valued at one hundred dollars each. A balance remaining unpaid, they filed and foreclosed a mechanic's lien upon the property, and caused the same to be sold at sheriff's sale. After the sale, E. G. Tyler took an assignment of the sheriff's certificate as trustee, and a deed was executed to him as trustee on February 5, 1891. It is claimed that plaintiff furnished the money which procured the assignment of the sheriff's certificate, and that E. G. Tyler holds the property as trustee for her. The building was erected on the property after the execution of the deed, in 1887, from Tyler to plaintiff.

The governing questions in the case are: *First.* Was the conveyance in 1887 without consideration, fraudulent, and void as to defendant Budd? And, *second,* did the assignment of the certificate of sheriff's sale amount to anything more than a redemption of the property from execution sale?

From what we have already said, it will be seen that Budd was a creditor of Tyler ever since the

consummation of the so-called "South Loan," in 1883; and, if the conveyance in 1887 was without consideration, it was voluntary and fraudulent as to Budd. Now, while it may be true that Tyler gave his wife eight hundred dollars at the time of their marriage, yet it appears that this eight hundred dollars was invested in the business of E. G. Tyler & Co., which investment plaintiff still claims to hold. The alleged consideration for the 1887 transfer is seven hundred dollars, drawn from the business of Tyler & Co. What part, if any, of this seven hundred dollars plaintiff is entitled to, does not appear. She denies being a partner of Tyler & Co.; yet she says she was to have a share of the profits (what share does not appear). If, then, E. G. Tyler drew anything from the firm, he owes it to the firm, and this could not be a consideration for the deed. Moreover, we are very doubtful about there being any promise on the part of Tyler to repay any part of this seven hundred dollars if it came from his wife. We are strongly inclined to the view that there was no loan of any kind by the wife to the husband. If she furnished him with any money, it was without any express promise on his part to repay the same, and the relation of debtor and creditor did not exist between them. This being true, the conveyance was voluntary and fraudulent as to Budd. Being voluntary, the burden rested on plaintiff to show that her husband had other property with which to pay Budd's claim at the time the conveyance was made. *Strong v. Lawrence*, 58 Iowa, 55 (12 N. W. Rep. 74). As sustaining our conclusion that the conveyance was voluntary, see *Hanson v. Manley*, 72 Iowa, 48 (33 N. W. Rep. 357); *Romans v. Maddux*, 77 Iowa, 203 (41 N. W. Rep. 763).

With reference to the sheriff's deed, we are forced to the conclusion that the building was erected upon the land by the husband; that the lots were turned in as part payment, without any contractual relations being created between plaintiff and her husband; and that the money furnished to procure the assignment of the sheriff's certificate was really the money of E. G. Tyler; and that the purchase of the certificate was in fact a redemption from the sheriff's sale. It is not important that we set out the testimony on which we base our conclusions. We have gone to the transcript, and examined all the testimony with care, and are abidingly satisfied with the conclusions reached. It is quite apparent that the taking of the sheriff's deed in the name of Tyler as trustee was a further effort to defraud the creditors of Tyler, and that plaintiff has no interest in the property which is the subject of controversy which can be enforced as against the defendants.

II. It appears from the testimony that, before the issuance of the execution which is the subject of complaint, another execution was issued, which was levied upon some personal property belonging to Tyler, which was sold at sheriff's sale for the sum of one thousand one hundred and ninety-seven dollars and twenty-six cents. It appears, however, that this personal property was incumbered by mortgage to the amount of eight hundred and eighty-seven dollars and eighty cents, in favor of one C. R. Bolter, as trustee. The amount of this mortgage was deposited with the clerk by the attorney for Budd, under the provisions of our law with reference to levies upon mortgaged property; and the amount so deposited was first taken from the amount realized at sheriff's sale, and the remainder, after paying costs, was applied upon the judgments against Tyler. It is insisted in argument

that the judgments were satisfied by the sale of the personal property on execution; that the attorney who advanced the amount of the mortgage was a mere interloper; and that his deposit either amounted to a full payment and satisfaction of the mortgage, or else was of no effect whatever; and that the full amount of the execution sale should be applied upon the judgments, which, if done, would fully satisfy them. We do not think the record justifies the claim here made. The record shows that defendant Budd, through his attorney, made the deposit of the money for the benefit of the holder of the Bolter mortgage, under the provisions of chapter 117, Acts Twenty-first General Assembly. Mr. Barnhart, the attorney, testifies that he deposited the money as attorney for Budd, and that he advanced it for him; and Budd testifies that he authorized the deposit for the purpose of paying off the mortgage; that he asked Barnhart to satisfy the mortgage if he could do it without his advancing any money. We think it sufficiently appears that the money was advanced for Budd by Barnhart, and the fact that Barnhart personally borrowed the money with which to do it is not in any manner controlling. That there may be no confusion, it is, perhaps, well to say that defendants, during the trial, withdrew their claim as to the east forty feet of the north twenty feet of lot 7, and the east forty feet of the south ten feet of lot 8, and consented that the plaintiff's injunction and claim thereto be made perpetual.

The decree as finally rendered seems to us to be fully justified by the testimony. This determination of the controversy renders it unnecessary to pass upon the motion filed by appellees. The decree of the district court is *affirmed.*