PAUL EVANS, Appellee, v. ALFRED C. EVANS et al., Appellees; MARY C. EVANS, Appellant.

**PLEADING:** **Cross-Complaint—Unallowable Counterclaim.** A fraudulent grantee of land may not, in an action by the judgment creditor of the grantor to set aside the conveyance, set up a counterclaim for money due to said grantee from said judgment creditor.

**FRAUDULENT CONVEYANCES:** Voluntary Conveyance—Presumption.
2 A voluntary conveyance by a husband to his wife is presumptively fraudulent as to existing creditors of the husband.

**HOMESTEAD:** Abandonment—Evidence. The homestead character of 3 rural property is seriously questioned by testimony that, upon the destruction of the residence, the husband and wife did not rebuild, but moved to town, purchased a new residence, and thereafter continued to live and vote in said town. Especially is this true when the record is silent as to the intentions of the husband. (See Book of Anno., Vol. 1, Sec. 10135, Anno. 38 et seq.)

Headnote 1: 34 Cyc. p. 652. Headnote 2: 27 C. J. p. 565. Headnote 3: 29 C. J. pp. 961, 965.

Headnote 2: 12 R. C. L. 517. Headnote 3: 13 R. C. L. 648.

*Appeal from Mahaska District Court.*—H. F. WAGNER, Judge.

OCTOBER 26, 1926.

Action in equity, to set aside the conveyance of a 200-acre tract of land by Alfred C. to Mary C. Evans, and to subject the same to the payment of a judgment of $1,481.98 against Alfred C. Evans in favor of plaintiff. Decree as prayed. The defendant Mary C. Evans alone appeals.—*Affirmed.*

*W. H. Keating* and *C. C. Orvis,* for appellant.

*J. G. Patterson,* for Paul Evans, appellee.

*McCoy & McCoy,* for Alfred C. Evans, appellee.

STEVENS, J.—I. This is an action in equity, to subject certain real property which it is alleged is owned by the defendant Alfred C. Evans, and described in a deed executed by him to his codefendant on November 12, 1921, purporting to convey the same to appellant, to the payment of a judgment in favor of plaintiff. The allegations of the petition are that the conveyance was without consideration, and that same was made with the intent to hinder, delay, and defraud the creditors of Alfred C. Evans. The appellant filed answer admitting the execution of the deed and denying the remaining allegations of the petition. Appellant also filed a cross-petition, claiming a homestead in the

1. PLEADING: cross-complaint: unallowable counterclaim.

premises described in the deed, and praying that same be set off before execution sale, and also setting up a cause of action for board and room furnished to appellee Paul Evans from 1922 to 1924, and praying that she have judgment against him therefor, and that same be set off against his judgment. A motion to strike the counterclaim was sustained by the court, and this ruling is the first matter of which appellant complains. The situation presented by the pleadings was that appellant, who was in no wise indebted to appellee plaintiff, sought to set up a counterclaim upon a cause of action in her favor against him for the purpose of defeating the judgment held by him against her husband. No demand for a personal judgment is made by plaintiff against either appellant or her husband. His claim was reduced to judgment before the action was commenced.

The right to plead a counterclaim is statutory, and is limited thereby to the matter and causes of action designated. The right to plead a cause of action in the form of a counterclaim is said to be of modern origin. The Revision of 1860 recognized and defined set-off (Section 2886); counterclaim (Section 2889); and cross-demand (Section 2891). The use of the word "counterclaim" in the Revision of 1860 was an innovation. The commissioners appointed to revise the Civil Code in their report (page 304) said:

"This counterclaim is that of the new system. There are objections to it. A better might be suggested, but we fear to try the experiment, especially as this has become so well settled by decisions. The word has been railed at by opponents of the new system, but it has now got a well defined meaning. New words are necessary to create new rights of pleading. The danger of old ones is the freight of old associations, which one cannot avoid introducing by their use, any one of which may at any time rise up and defeat the new use, though ever so carefully guarded. And yet it is not true, as some have said, that this word was before quite unknown to common law; we have found it used in 1717 in Brown's Cases in Parliament, page 587."

Set-off, counterclaim, and cross-demand were combined in the Code of 1873 under Section 2659. This section, with few changes, appears as Section 3570 in the Code of 1897; and as Section 11151 in the Code of 1924.

Some of the matters pleaded by appellant were barred by

the statute of limitations. A cause of action arising on contract or ascertained by the decision of a court may be set up in an action founded on contract, as may also any new matter constituting a cause of action in favor of the defendant which the defendant might have brought when suit was commenced, or which was then held, whether matured or not. A counterclaim, therefore, is a cause of action which, if established, will tend to reduce or offset the plaintiff's demand. It is true, of course, that, if the plaintiff fails to establish the cause of action pleaded, judgment may be rendered in favor of the defendant upon the counterclaim, if he has established a right of recovery. Appellant's cause of action existed at the time judgment was entered against her husband and also at the time this cause of action was commenced; but it cannot be pleaded in this action, as appellee asserts no claim for a personal judgment against her, but prays only for the cancellation of the deed executed by her codefendant to her, and that the property therein described be subjected to the payment of his judgment. Appellant's claim does not come within the original definition of a set-off, and could not have been pleaded under our former statutes, as a counterclaim or a cross-demand. The motion to strike was properly sustained.

II. The voluntary character of the conveyance by Alfred C. to his wife, Mary C. Evans, is conclusively established by the evidence. Counsel assert that a recital in the deed that the conveyance was subject to prior incumbrances in some way makes the appellant liable therefor. That it does not, is too well established to require discussion or the citation of authorities.

2. FRAUDULENT CONVEYANCES: voluntary conveyance: presumption.

Moreover, it is extremely doubtful whether the deed was ever delivered. The testimony of appellant on this point is squarely contradicted by her husband. Both agree that it was prepared by an attorney in Oskaloosa, and left in his office. It was never recorded. The trial court found against appellant on this point. Whether it was delivered or not, it was executed without consideration, and was presumptively fraudulent, as against the creditors of the grantor. It is not claimed that the grantor has other property out of which to pay plaintiff's judgment. *Dolan v. Newberry,* 200 Iowa 511; *Kolb v. Mall,* 187 Iowa 193. The decree of the trial court setting aside the conveyance is right.

III. Appellant asked that 40 acres of the tract which com-

prises 200 acres be set off as a homestead. The evidence shows that she and her husband lived for many years on the farm in question; that, some two or three years prior to the trial, the dwelling house in which they resided was destroyed by fire; and that they then moved to Oskaloosa, and purchased a residence in that city, in which they have since resided. Both have voted in state and city elections in Oskaloosa. Appellant testified that they moved to town and purchased a residence for the temporary purpose of educating a son, and that they always had the intention of returning to the farm. The farm has two sets of improvements, in one building of which an older son and his family have resided for five years. Nothing appears to have been done about rebuilding a residence to take the place of the one destroyed by fire. The defendant Alfred C. Evans appeared by counsel, but filed no pleadings in the case. He gave no testimony whatever touching the subject of homestead. What his intention was at the time the family moved to Oskaloosa is not disclosed by him, although he was examined at length as a witness upon the trial. He was the head of the family, and the selection of the residence rested, at least primarily, with him. *Illinois Oldsmobile Co. v. Miller*, 199 Iowa 894.

3. HOMESTEAD: abandonment: evidence.

The evidence was clearly insufficient to establish a homestead in the premises. The burden was assumed by and rested upon appellant to negative the presumption that the homestead was abandoned when they moved to Oskaloosa, and secured and occupied other premises as their home. She failed to meet this burden.

Many other propositions are suggested and discussed by counsel in their brief and argument, but what we have already said disposes of the case, and we shall not separately consider the remaining points urged. The decree is affirmed.—*Affirmed.*

DE GRAFF, C. J., and FAVILLE and VERMILION, JJ., concur.