JAMES W. SCOVEL, Trustee, Appellee, v. RUTH M. PIERCE et al., Appellants.

No. 39518.

June 24, 1929.

*Devitt & Eichhorn,* for appellants.

*Reed & Reed* and *McNeil & Scovel,* for appellee.

GRIMM, J.—Prior to December 13, 1920, the defendant James C. Pierce had become indebted to the State Bank of Deep

River for borrowed money, to the amount a little less than $4,000, a portion of which was used for the benefit of the wife, Ruth M. Pierce. On said date, Pierce executed a new note to the bank, to take up all old notes and for an additional small sum in cash. Mrs. Pierce signed this note, and later she and her husband executed a mortgage, to secure the payment of the same. This note was renewed in February, 1923.

About the month of February, 1924, Frank J. Wilson, father of Mrs. Pierce, died, possessed of real and personal property, and by the terms of his will, his widow was given a life estate, and the property, subject to the life estate, was divided equally between his five children. In May, 1926, Mrs. Pierce executed an assignment of her interest in her father's estate to her two sons, Robert and James, Jr. At the time of this conveyance, Mrs. Pierce had no property other than her said interest in her father's estate. In September, 1927, the said bank began suit on the note.

On the 22d day of October, 1927, both James C. Pierce and Ruth M. Pierce filed petitions in bankruptcy, in the southern district of Iowa. Attached to Mrs. Pierce's petition was a schedule in which she listed the State Bank of Deep River as a creditor to whom she owed $4,000. On the 26th day of October, 1927, an adjudication of bankruptcy was entered. On November 15, 1927, J. W. Scovel, plaintiff in this case, was appointed trustee of the estates of said bankrupts. On the 20th day of December, 1927, the claim of the State Bank of Deep River, in the sum of $5,506, was approved and allowed as an unsecured claim against the estate of the said Ruth M. Pierce, bankrupt.

I. The first point relied upon for reversal is that the suit to set aside this conveyance was not brought within four months of the date of the conveyance, and therefore, under the bankruptcy  laws of the United States, the time for bringing the suit had expired. Section 67e of the Bankruptcy Act (U. S. Comp. Stat. 1916, Section 9651) is as follows:

"That all conveyances, transfers, assignments, or incumbrances of his property or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on

his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned, or encumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. And all conveyances, transfers, or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, territory, or district in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction.''

Section 70e of said Bankruptcy Act (U. S. Comp. Stat. 1916, Section 9654) is as follows:

''The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona-fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona-fide holder for value. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction.''

Section 47a of the Act (U. S. Comp. Stat. 1916, Section 9631) provides, among other things, that the trustee:

"\* \* \* shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied \* \* \*."

It is claimed that, by virtue of the foregoing, and the decision of this court in *Murphy v. Murphy & Co.*, 126 Iowa 57, this action is barred. Such appears to be the holding of the *Murphy* case. It was decided in November, 1904. The foregoing provisions of the Bankruptcy Act were in force at that time, and no material amendment has since been passed. In 1918, in passing on this question, the Supreme Court of the United States said:

"This section [70e] as construed by this court gives the trustee in bankruptcy a right of action to recover property transferred in violation of state law. [Citing cases.] \* \* \* And a right of action under this subdivision is not subject to the four months' limitation of other sections (60b, 67e) of the Bankruptcy Act. Under this subdivision, if a creditor could have avoided a transfer under a state law, a trustee may do the same." *Stellwagen v. Clum*, 245 U. S. 605, 614.

"The right of action given the trustee by the just-mentioned provision [70e] is not subject to the four-months limitation. Under that provision, if a creditor could have avoided a transfer under a state law, a trustee may do the same." *Campbell v. Calcasieu Nat. Bank*, 12 Fed. (2d Ser.) 981 (C.C.A. 5th Cir., 1926).

See, also, *Campbell v. Dalbey*, 23 Fed. (2d Ser.) 229 (C.C.A. 5th Cir., 1928) ; *Peacock v. Fairbairn*, 45 Ida. 628 (264 Pac. 231). Several of the other states have adopted the same rule.

In administering a Federal statute, we prefer to apply the rules of construction given thereto by the Federal courts. In accordance therewith, we hold that the plaintiff was not confined, in the bringing of this suit, to the four-months period. In so far as this ruling is in conflict with *Murphy v. Murphy & Co.*, supra, the same is hereby overruled.

II. It is claimed that Ruth M. Pierce was not legally in-

debted to the State Bank of Deep River in any amount, at the time she made this assignment, in May, 1926, and consequently  the bank could not have been at that time an existing creditor. It appears that, at the time Mrs. Pierce first signed the note to the bank, her husband had an accumulated indebtedness at the bank of approximately $4,000. This new note was in renewal of all old notes, and for a small cash balance. At the time the note was signed by the husband, Pierce, Mrs. Pierce not being present, there was an understanding between the bank and Pierce that subsequently Mrs. Pierce would sign the note and the mortgage securing the payment thereof. This transaction took place in December, 1920, and it was not until March following that Mrs. Pierce signed the note and mortgage. This first note matured on December 13, 1921. It appears that the bank did not press the makers for payment until in February, 1923. At that time, the note was renewed. Mrs. Pierce says, on this subject:

"I know that I signed the note and mortgage so that the bank would give my husband further time, and not press him for payment."

There is in the record some evidence tending to show, on behalf of Mrs. Pierce, that she thought, at the time she signed the first note and the mortgage, that she was only releasing her dower  interest in the farm, and not obligating herself personally upon the note. But there is no evidence that she was so told or led to believe by the bank or any of its officials. The representative of the bank testifies that her signature to the note and mortgage was required as a condition precedent to the surrender of the old notes. However this may be, Mrs. Pierce's own statement, hereinbefore quoted, in reference to an extension of time for her husband, is conclusive. This court has recently said (*Commercial Sav. Bank of Ames v. Carey,* 207 Iowa 1060):

"Nor may it be questioned that an extension of time [for] payment to a debtor furnishes adequate consideration for the signature to a new note by another for a debt owed by the principal debtor."

Furthermore, in October, 1927, Mrs. Pierce filed a petition in

bankruptcy, and scheduled in connection therewith the said note of $4,000 as *her* indebtedness to the State Bank of Deep River, Iowa. Subsequently, in December, 1927, the claim of the State Bank of Deep River on said note was approved and allowed as an unsecured claim against the estate of the said Mrs. Pierce, bankrupt.

After a careful examination of the somewhat lengthy record upon this subject, we hold that Mrs. Pierce was indebted to the State Bank of Deep River at the time this assignment was made.

III. It is claimed that Mrs. Pierce was not insolvent at the time the assignment was made, in May, 1926. At the time of the transfer in question, the note to the bank was still unpaid,  and Mrs. Pierce herself testified that, at the time of the transfer, she had no property other than her interest in her father's estate. She had not yet come into possession of this property. Mrs. Pierce testified as follows:

"My sole object in making the transfer was to prevent my husband from squandering the money which would come from my father's estate, because I wanted the boys to have it."

It appears clearly from the record that, at the time of the transfer, both Mr. and Mrs. Pierce were without funds. It is claimed that the petty earnings of the boys and small contributions made to the boys by relatives had been and were being appropriated for family use at that time. The value of Mrs. Pierce's interest in her father's property. is in dispute. The estate, at the time of the transfer, had not been settled, and it does not appear what the value of her interest would have been, had it been then reduced to cash. On the whole record, we find that Mrs. Pierce did not have, after the conveyance in question, sufficient property to satisfy the claims of her creditors. On this subject, see *Campbell v. Campbell*, 129 Iowa 317, where it is said:

"But a voluntary conveyance, even to children, as to whom there may be presumed an inducement by way of love and affection, is constructively fraudulent as to an existing creditor, unless the grantor had remaining after the conveyance sufficient property to satisfy the claims of his creditors; and the burden is on the grantee to rebut the constructive fraud by proving that

the remaining property of grantor was sufficient for this purpose.''

This court has also said:

''Where it is found that a debtor is insolvent at the time judgment is rendered, and is unable to respond to the amount recovered, his insolvency will be considered as extending back beyond a voluntary conveyance of his property made during his indebtedness, unless the contrary is shown.'' *Strong v. Lawrence,* 58 Iowa 55.

This rule also being applied to Mrs. Pierce at the time she, upon her own motion, was adjudicated a bankrupt, it follows that she became insolvent by making the transfer in question.

IV.   Finally, it is claimed that the assignment was not made with a fraudulent intent to hinder, delay, and defraud existing creditors.   It is contended on behalf of Mrs. Pierce, among other things, that her transaction with the bank, about March 1, 1921, amounted only to a waiver on her part of her dower interest in the farm on which the mortgage had been given to the bank as security for the note.   It is claimed in her behalf that the old notes owed by her husband to the bank had been surrendered prior to the time she first signed a note to the bank with her husband.   It is claimed that no demand was made upon Mrs. Pierce by the bank until suit was brought upon the note and mortgage.   It is also claimed in her behalf that, at the time she signed the renewal note,—the one in suit,—the farm had been surrendered to the bank.   It appears from the record that, at the time the first $4,000 note was executed by Mr. Pierce, Mrs. Pierce was not present; but it also appears that a definite understanding and agreement was entered into between Pierce and the bank, that Mrs. Pierce should sign the note and join with Mr. Pierce in the execution of a mortgage.   This was done in March, 1921.   It is undisputed that this indebtedness was renewed from time to time, until finally the note in suit was executed by both Mr. and Mrs. Pierce; and Mrs. Pierce admits, as previously stated, that she executed this note for the purpose of obtaining for her husband additional time for payment.

It is claimed on behalf of Mrs. Pierce that the minor boys

had, from time to time, been earning small amounts, and that these sums had been taken and used partly in furnishing supplies for the boys, and partly for the common expenses of the household. The amounts do not clearly appear, but it is apparent that the total is small. It is also claimed that these boys had been the recipients of small gifts, from time to time; from different relatives, and that these sums also were likewise appropriated for family expenses and other similar needs. It is claimed, however, that these funds which thus came into the possession of the boys formed a consideration for the transfer. The whole record on this subject is unsatisfactory, and not at all convincing.

The lot of Mrs. Pierce had been none too fortunate. Her husband was far from successful. He was improvident. The family finances were in desperate condition. Notes matured from time to time, and Pierce continued to add the unpaid interest to the principal, and renew the paper. It must have been apparent to Mrs. Pierce that existing indebtedness would very soon sweep away every vestige of property not exempt. It was under such circumstances that Mrs. Pierce made an assignment to her boys of her interest in her father's estate,—an interest which had not yet been determined, and in an estate which had not yet been settled. It was a laudable and maternal instinct which prompted the mother to endeavor to protect her boys from the gathering storm, but unfortunately, creditors had rights demanding protection. Without a showing that Mrs. Pierce had, independent of her interest in her father's estate, sufficient property with which to pay the bank, the conveyance to the children was constructively fraudulent. *Campbell v. Campbell,* 129 Iowa 317; *Hansen v. First Nat. Bank,* 197 Iowa 1101.

''It is a firmly established doctrine that, where a voluntary conveyance is made by a husband to his wife, it is presumptively fraudulent as to existing creditors, and the grantee is under the burden of showing that the grantor had sufficient property remaining to pay his debts. *Tyler v. Budd,* 96 Iowa 29; *Seekel v. Winch,* 108 Iowa 102; *Carr v. Way,* 141 Iowa 245; *Woods v. Allen,* 109 Iowa 484; *Kolb v. Mall,* 187 Iowa 193. The same rule applies to a voluntary conveyance made to a child. *Strong v. Lawrence,* 58 Iowa 55; *Campbell v. Campbell,* 129 Iowa 317;

*Long v. Garey Inv. Co.*, 135 Iowa 398.'' *Dolan v. Newberry*, 200 Iowa 511, 514.

There is no satisfactory showing that the relatives had given the boys any specific amount of money, or that the mother owed either of them any amount. In fact, there is testimony to warrant the conclusion that all the money given by the relatives, at least that given by the grandfather, was not, in fact, given to the boys, but to the father.

Moreover, the taking of the earnings of the minors by the parents, under circumstances as shown here, did not constitute a consideration for the conveyance. There is no showing that the boys were emancipated, and under those circumstances, their earnings belonged to the father. *Crary Bros. v. Hoffman*, 115 Iowa 332; *Gamet & Ogden v. Simmons*, 103 Iowa 163. See, also, *Ransom v. Lochmiller*, 207 Iowa 1315.

Further discussion of the evidence would unduly extend this opinion.

This case presents an unfortunate situation. It is to be regretted that the boys—particularly the one in poor health—cannot profit by the mother's inheritance. But after a very careful, painstaking examination of the record, and an examination of authorities, we are forced to the conclusion that the case must be, and it is,—*Affirmed*.

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.