COMMERCIAL SAVINGS BANK of Marion, Appellee, v. EARL R. BALDERSTON et al., Appellants.

No. 42501.

May 14, 1935.

Fred W. Hann, for appellants.

Donnelly, Lynch, Anderson & Lynch, for appellee.

Kintzinger, J.—The evidence in this case shows that on September 29, 1931, the defendants Earl R. Balderston and Lavina L. Balderston, his wife, executed their promissory note to the plaintiff bank in the sum of $4,000 payable five months after date; that only a partial payment was made thereon when it became due; and on May 26, 1932, plaintiff recovered judgment against defendants for the balance due thereon in the sum of $3,622.33 and costs.

When the note was executed, the defendants, Earl R. Balderston and his wife, were the owners of a 160-acre farm, 40 acres of which were clear; a residence in Alburnett clear of incumbrances; a 189-acre farm incumbered by a mortgage of $13,500; and personal property consisting of horses, cattle, heifers, sows, hogs, pigs, sheep, and grain and hay, all valued at about $5,000. One hundred twenty acres of the 160 referred to above was mortgaged for $8,700.

On January 19, 1932, and long after the indebtedness to plaintiff was incurred, the defendants Earl R. Balderston and his wife

conveyed the 160-acre farm and the Alburnett property to their son, the defendant Kenneth R. Balderston, for a purported consideration of "one dollar and other valuable consideration." The grantee did not assume the mortgage indebtedness against the 120 acres included in the 160 conveyed to him. The only valuable consideration relied on was an alleged oral agreement, purported to have been made between the father and son in 1929, that if the son would remain at home until he was married the father would *give* him the 160-acre farm. At that time the son was a minor, nineteen years of age. Hitherto the son had been attending school, and at that time had just graduated from the Alburnett high school. His parents desired to have him attend college for further education, but the son preferred staying on the farm. He remained at home and became of age in August, 1931; and was married in September of the same year, less than one month after coming of age. The evidence shows that the unincumbered 40 acres included in the 160 was valued at about $4,000, and the Alburnett property about $2,500.

The note of September 29, 1931, upon which plaintiff secured judgment was given in renewal of prior indebtedness to the bank. At that time the bank required, and defendant furnished, a financial statement as a basis of their credit. A similar statement was furnished in May, 1931. Both statements listed substantially the same assets at an inflated valuation and included the real and personal property hereinabove described. The bank extended credit and accepted defendants' notes upon the showing made therein. The principal reliance of the bank in extending credit was the unincumbered 40 acres included in the 160, the town property, and the unincumbered personal property listed in the financial statements.

At about the same time the deeds in question were executed, his parents also executed two chattel mortgages; one for $2,120 to the Federal Land Bank of Omaha, the holder of the $13,500 mortgage, covering all crops grown on the 189-acre farm during the years 1932 and 1933; the other was executed January 19, 1932, to defendant's sister, Mrs. Cora Falcon, in the sum of $3,435.65 upon all the personal property then owned by defendants. It is fair to assume from the evidence that the value of all of defendants' personal property, after deducting exemptions, would not exceed the amount of the chattel mortgage. Thus it appears that on January 19, 1932, the defendants divested themselves of practically all of

their real and personal property, except their equity in the 189-acre farm, which was subject to the mortgage of $13,500. The record fairly shows that defendants' equity in that farm was practically worthless.

Although the son was married in September, 1931, the deed was not executed until January 19, 1932, and a short time before the maturity of defendants' note, and at a time when plaintiff bank was endeavoring to collect the amount due thereon. Mr. Balderston testified that: "This chattel mortgage was given January 19, 1932. * * * The chattel mortgage that we then executed conveyed *all* the personal property which I then owned." The record shows that after the recording of these deeds and mortgages the bank had several interviews with defendants, with a view of having them pay the note or give security therefor. This they were unable to secure, and they reduced the note to judgment.

Mrs. Balderston in testifying about the purported oral agreement said: "Kenneth graduated from the Alburnett high school in May, 1929. * * * We * * * liked to have had him go to Ames * * * and get more education; but he didn't seem to want to and would rather stay on the farm. We * * * told him we would turn the 160 acres over to him when he got married. Eventually he decided to stay * * *. We didn't expect him to get married quite so young, but he did. In September, 1931. They lived with us on the 160 until we moved out. After Kenneth married we deeded the 160-acre farm and the Alburnett property to him."

In reference to the same matter Mr. Balderston said: "I told him if he would stay at home and help us on the farm until he was married we would *give* him the 160 acres. He replied, 'I have always liked farming and * * * will think it over.'" He afterwards said he had made up his mind to stay. In reference to the same matter the boy testified that his parents told him if he "would stay there * * * and help with the farm work they would turn the place over to me when I was married."

There is testimony tending to show that in some of these interviews the defendant Earl R. Balderston, in explaining the transfers to his son, said that that was the only way he had of protecting himself.

The lower court found that the deeds were executed voluntarily, without consideration, and for the purpose of hindering and delaying plaintiff in the collection of its claim, decreed plaintiff's judg-

ment a superior lien to any claim of the grantees in said property, and ordered a special execution for the sale of the real estate conveyed to satisfy plaintiff's lien.

Appellants claim the decree was erroneous because no fraud was established, against either the grantor or grantee, in the execution of the deeds in question; that the grantee had given a valuable consideration for the deeds; and that insolvency of the grantors, Mr. and Mrs. Earl R. Balderston, had not been established.

The evidence in this case conclusively shows that at the time the deeds in question were executed, the parents had substantially divested themselves of all their property, except an equity in the 189 acres of farm land which was subject to the lien of a first mortgage of $13,500, interest, and taxes. Under the equitable maxim that "a person must be just before he is generous," a person cannot transfer his property without consideration, or for a grossly inadequate consideration, without leaving sufficient assets remaining to satisfy his creditors.

Aside from whatever might be said about the good faith of the grantee, a reading of the record in this case can lead to no other reasonable conclusion except that the grantors intended to place their property beyond the reach of their creditors.

It is not claimed that a transfer of the unincumbered Alburnett property was contemplated or considered in the conversation about giving the 160 acres to the son if he would remain at home until he was married. Therefore no consideration whatever can be claimed for the transfer of that property to the boy.

The grantor as father of the grantee was entitled to his son's services until he became of age. The only consideration claimed for the transfer of the 160-acre farm was an alleged oral agreement, between the parents and the son, that if he would remain on the farm until he was married they would *give* it to him. He remained home until he became of age. His parents reared and educated him until after he was nineteen years old, and were lawfully entitled to his services until that time. Within one month after he became twenty-one he was married; and after that he and his wife both continued living with his parents until they moved away just prior to executing the deeds in January, 1932. Any services he could have rendered in the few days between the time he became of age and his marriage, or even after he graduated from high school, would have been a grossly inadequate consideration for the

transfer of the property involved. There is evidence tending to show that the 160 acres in question was valued at about $12,000, 120 acres of which was subject to a mortgage of $8,750. The unincumbered Alburnett property was valued at $2,500.

There is no satisfactory showing made in this case from which we can conclude that the son was emancipated at the time the purported agreement is alleged to have been entered into, nor is there any showing as to the value of any services performed by him from the time he left high school until he became of age, or until he was married within a month thereafter. It is therefore our conclusion that any services rendered by the son until the time he became of age could not be considered as a consideration for the transfer of the 160 acres in question. The receipt of earnings by a parent from his unemancipated minor child is not a sufficient consideration for a conveyance of property made to the minor. Scovel v. Pierce, 208 Iowa 776, 226 N. W. 133; Crary Bros. v. Hoffman, 115 Iowa 332, 88 N. W. 833; Gamet & Ogden v. Simmons, 103 Iowa 163, 72 N. W. 444; Ransom v. Lochmiller, 207 Iowa 1315, 224 N. W. 469.

If, however, the services of the son could in any manner be considered as a consideration for the transfer of said property, it is our conclusion that such consideration was grossly inadequate. It is therefore our finding that there was either no consideration for the deeds in question, or that the consideration therefor was grossly inadequate. In either event the grantor was guilty of constructive fraud, and the conveyance of the 160 acres to the son must be held to have been purely voluntary. In the case of Cox v. Collis, 109 Iowa 270, 80 N. W. 343, we said:

"This was a grossly inadequate consideration, and although the purchase was made by Mrs. Collis in good faith, and without any fraudulent intent, still, as to the creditors of John [her husband], it is a fraud, to the extent that the consideration is inadequate; in other words, as to his creditors, she should pay the reasonable value of the property she purchased. She owes to the creditors of John Collis that difference, as a part of the purchase price, and they are entitled to enforce it as a vendor's lien to the extent of their claim, not exceeding the difference."

It is the law in this state that a transfer of property made by an insolvent grantor with intention to defraud his creditors is valid provided the grantee acts in good faith and gives an adequate con-

sideration therefor. First National Bank of Mason City v. Currier, 218 Iowa 1041, 256 N. W. 734; Tirrill v. Miller, 206 Iowa 426, 218 N. W. 303; Stephenson v. Cook, 64 Iowa 265, 20 N. W. 182; Carlisle v. Milliman, 199 Iowa 949, 203 N. W. 268; Bartlett v. Webber, 218 Iowa 632, 252 N. W. 892; Pike v. Coon, 217 Iowa 1068, 252 N. W. 888.

It is likewise the settled rule of law in this state that where the evidence shows that a conveyance of property is voluntary and without consideration, or is given for a grossly inadequate consideration, it is constructively and presumptively fraudulent as to existing creditors, and in such event the burden is upon the grantee to show that the grantor was solvent or had sufficient property remaining to pay his debts at the time of executing the conveyance. Strong v. Lawrence, 58 Iowa 55, 12 N. W. 74; Tyler v. Budd, 96 Iowa 29, 64 N. W. 679; Seekel v. Winch, 108 Iowa 102, 78 N. W. 821; Woods v. Allen, 109 Iowa 484, 80 N. W. 540; Campbell v. Campbell, 129 Iowa 317, 105 N. W. 583; Long v. Investment Company, 135 Iowa 398, 112 N. W. 550; Carr v. Way, 141 Iowa 245, 119 N. W. 700; Kolb v. Mall, 187 Iowa 193, 174 N. W. 226; Dolan v. Newberry, 200 Iowa 511, 202 N. W. 545, 205 N. W. 205; Malcolm Savings Bank v. Mehlin, 200 Iowa 970, 205 N. W. 788; Buell v. Waite, 200 Iowa 1020, 205 N. W. 974; Erusha v. Wisnewski, 207 Iowa 1187, 224 N. W. 517; Hansen v. Richter, 208 Iowa 179, 225 N. W. 361; Scovel v. Pierce, 208 Iowa 776, 226 N. W. 133; see, also, Williams Savings Bank v. Dennis Murphy and Andrew V. Murphy, 219 Iowa 839, 259 N. W. 467.

In Campbell v. Campbell, supra, loc. cit. 319, this court announces the rule as follows:

"The question, of course, is as to the financial condition of the grantor at the time the conveyances were made; but, when it appears subsequently that he has no property remaining sufficient to meet the claim of a creditor existing at the time the voluntary conveyance was made, it will be presumed that such insolvent condition existed immediately after the voluntary conveyance, unless the contrary is shown."

In Long v. Investment Company, supra, loc. cit. 403, we said:

"And even where a partial consideration is paid, if the difference between the price paid and the actual value of the property is apparent, the conveyance will be regarded as voluntary to the extent

of that difference. Lyon v. Haddock, 59 Iowa 682, 13 N. W. 737. In other words, in such cases the burden of proof is upon the grantee to establish facts which will repel the presumption of fraud and to show the deed to have been for a valuable consideration."

In Dolan v. Newberry, supra, loc. cit. 514, we said:

"It is a firmly established doctrine that, where a voluntary conveyance is made by a husband to his wife, it is presumptively fraudulent as to existing creditors, and the grantee is under the burden of showing that the grantor had sufficient property remaining to pay his debts. Tyler v. Budd, 96 Iowa 29, 64 N. W. 679; Seekel v. Winch, 108 Iowa 102, 78 N. W. 821; Carr v. Way, 141 Iowa 245, 119 N. W. 700; Woods v. Allen, 109 Iowa 484, 80 N. W. 540; Kolb v. Mall, 187 Iowa 193, 174 N. W. 226."

In Buell v. Waite, supra, we said:

"A voluntary conveyance is constructively fraudulent as to existing creditors, unless the grantor had sufficient remaining property to satisfy his creditors; and the burden is on the grantee to establish that his remaining property was sufficient for that purpose."

It is the settled rule of law in this state that transactions of this nature between a parent and son, where the parent is insolvent or in failing circumstances, will be closely scrutinized, and if the taint of fraud is found or is fairly to be inferred, they will not be upheld. The grantee under such circumstances is not entitled to be considered a bona fide purchaser. Ransom v. Lochmiller, 207 Iowa 1315, 224 N. W. 469; Lietz v. Grieme, 212 Iowa 1305, 236 N. W. 395, 396; Webber v. King, 205 Iowa 612, 218 N. W. 282; Howell v. Howell, 211 Iowa 70, 232 N. W. 816.

The facts in this case bring it within the rule announced in the foregoing cases. We are therefore constrained to hold that the burden of proving the grantor's solvency was upon the grantee. This has not been established; on the contrary, we believe that the grantor's insolvency has been established by the greater weight of the evidence. All of the defendants' real estate not covered by a mortgage was transferred to the grantee. The only property he had left was the 189 acres incumbered by a mortgage of $13,500, interest, and taxes. There is testimony showing that this farm had no equity in it above the mortgage. This testimony is confirmed by the fact that the grantor executed a chattel mortgage of $2,120 to the

holder of the real estate mortgage, to secure delinquent payments, and taxes. It is also fair to assume, from the existing farm values, that a sale of the incumbered property would not have realized more than sufficient to clear the incumbrances thereon. It is also fair to assume from the record in this case that all of his personal property was mortgaged for substantially all it was worth.

The lower court decreed that the real estate in question was subject to a lien of plaintiff's judgment, and that plaintiff was entitled to have it subjected to a sale under special execution to satisfy the amount of the judgment, with interest and costs; and that plaintiff's judgment was a prior lien upon the real estate in question, superior to the rights of defendants therein.

Appellant's argument says a homestead was included in the 160 acres. No such claim is made in the pleadings. Neither does the evidence show a claim to any part of it as a homestead. As no such issue was raised below, it cannot be considered here.

From a careful consideration of all the evidence, we are constrained to hold that the consideration, if any, for the deeds in question was grossly inadequate; that the deeds were purely voluntary; that in the execution thereof the defendants Earl R. Balderston and wife were guilty of constructive fraud; and that they were insolvent at the time the deeds were executed.

It is therefore our conclusion that the judgment of the lower court was right, and the same is hereby affirmed.—Affirmed.

ANDERSON, C. J., and all Justices concur.