LEONA KATHRYN McCOY, appellant, v. LEAH REID MARTIN, appellee.

No. 51443.

(Reported in 131 N.W.2d 783)

DECEMBER 15, 1964.

James Furey and Leighton A. Wederath, both of Carroll, for appellant.

Edward S. White, of Carroll, for appellee.

THOMPSON, J.—The record in the case at bar is scanty, counsel for the respective parties contend for many rules of law which are not controlling, and the trial court seems to have placed its decision in large part at least upon grounds which are at best doubtful. Nevertheless, since the case is triable de novo here, we agree with the judgment of the court without entirely concurring in the road by which it was reached.

The contest is between the first and second wives of Dr. Sidney Dean Martin, a physician and surgeon who formerly practiced at Carroll. Doctor Martin died in April 1962, after a long period of ill health. He was divorced from the plaintiff in 1931, and married the defendant later in the same year. The plaintiff has also remarried. The divorce decree awarded the plaintiff substantial property, and further provided that Doctor Martin should keep in force two insurance policies on his life payable to the plaintiff; one in the amount of $10,000, the other of $5000. The specific companies issuing the policies were named.

Later each of these companies failed; but Doctor Martin procured two substitute policies in the same amounts in other

companies, and these were in force when he died. It developed, however, that beginning in 1960 he had borrowed on these policies for the purpose of paying annual premiums, in the total amount of $1963.82. The face of the policies, less the amount of the loans, was paid to the plaintiff upon the insured's death. The present action seeks to recover the deducted amount of the loans.

About 1941 Doctor Martin and the defendant built a home on lots in Carroll. Title was in Doctor Martin until 1948, when he deeded the property to the defendant. The deed was not recorded until after his death; but the defendant testified without contradiction that it has been in her possession at all times since its execution. No question of sufficient delivery is urged. But the plaintiff contends that she was an existing creditor of Doctor Martin at the time of the conveyance, that it was voluntary and without consideration, and that as to her it was fraudulent, and she asks a lien upon the real estate for the amount by which the proceeds of the policies were diminished by the loans. The trial court entered its decree and judgment adversely to her, and she appeals.

I. While several questions are argued by the respective parties, we find it necessary to decide only one. The trial court seems to have thought that the original divorce decree might have been modified during Doctor Martin's lifetime, and so, "this being a court of equity 'what should have been done should be deemed done' now, to the same extent as though the same had been done in the decedent Martin's lifetime."

We have indicated that we do not find it necessary to agree with this holding to affirm the trial court. If it is a case in which the learned court was right for a wrong reason, it was nevertheless right. We agree with its final conclusion that the equities are with the defendant.

■■ One well established legal principle controls the decision in the instant case. The conveyance to the defendant by Doctor Martin in 1948 was made without consideration. She so testifies. The applicable rule is that the conveyance was therefore presumptively fraudulent as to existing creditors, and the burden was then upon the grantee to prove that the grantor at the

time it was made had sufficient property to pay the debts then owing by him. Whether the plaintiff was an existing creditor in 1948 is disputed, but we do not find it necessary to decide that point. We shall assume, for the purposes of this discussion only, that she was such a creditor. She was not, however, a lienholder as against the property conveyed. Slack v. Mullenix, 245 Iowa 1180, 1184, 1185, 66 N.W.2d 99, 101, 102; 49 C. J. S., Judgments, section 458, pages 887, 888.

But, assuming that the plaintiff was an existing creditor, there remained the burden on the part of the defendant to show that Doctor Martin at the time of the conveyance had sufficient funds to pay his debts; in other words, that he was not insolvent. Terre Haute Brewing Co. v. Linder, 233 Iowa 359, 363, 7 N.W.2d 16, 18; Winnebago Auto Co. v. Bilstad, 231 Iowa 613, 617, 1 N.W.2d 704, 705, 706; Grimes Savings Bank v. McHarg, 224 Iowa 644, 647, 276 N.W. 781, 784; Commercial Savings Bank v. Balderston, 219 Iowa 1250, 1256, 260 N.W. 728, 731; Evans v. Evans, 202 Iowa 493, 496, 210 N.W. 564, 565. We must determine whether the defendant carried the burden of showing solvency on the part of the grantor.

Plaintiff's counsel made a valiant effort to prove Doctor Martin's solvency at the time of the conveyance in interrogation of the defendant. The record shows this:

"Q. He [Doctor Martin] had money that he received when he got out of the clinic, isn't that correct? A. Well, I suppose. I never really knew anything about the Doctor's money. He retired in 1947. He was sick all that winter, but I don't remember the date he left the clinic.

"Q. If I tell you that he received about $48,865.50 as his share, that would be about right, wouldn't it? A. I haven't the faintest idea.

"Q. And likewise, if I tell you he received from his son for stock that he had at about that time, in the amount of $11,200 that would be about right, would it not? A. I wouldn't know.

"Q. And likewise, he received another amount in the amount of $6120 at about that time from a part of the operation, that would be right, would it not? A. I don't know.

"Q. From his son Joe, I mean. A. I don't know anything about the business."

Affirmative answers, which counsel invited, would have gone far to show Doctor Martin's solvency at the time of the conveyance. But, except that the defendant agreed with the first question to the extent of saying she supposed the doctor had money when he got out of the clinic, the quoted questions and answers show nothing more than that counsel apparently had some information, and exact figures, that Doctor Martin received substantial amounts of money when he retired and sold his interest in a clinic.

However, we think there is other substantial evidence which carries the burden for the defendant. The conveyance was made in 1948; it was not until twelve years later, in 1960, that Doctor Martin was compelled to borrow money on the insurance policies to pay the premiums. He paid them out of his own funds during that interval. There is no showing that he owed other debts. The defendant testified that she owned some land and that she and the doctor used the income from that for their living expenses "during the last few years of his life." The implication of this is that the doctor had sufficient funds to pay their living expenses until those last few years. What constitutes a "few" is uncertain; but we think under the circumstances here it would not mean the entire fourteen years between the time of the conveyance and the date of Doctor Martin's death.

The record might be much fuller on the question of the grantor's solvency at the time of the conveyance; but we think the fact he was able to pay the premiums for twelve years from his own funds is a sufficient indication that he was not insolvent in 1948. There is in fact a strong showing that the conveyance was not made to defeat any rights of the plaintiff. The named companies issuing the policies specified in the divorce decree afterward failed; but the doctor, without quibbling or attempt to evade, procured substitute policies in other companies, accepting without complaint whatever loss was occasioned by the transfer and kept them current from his own funds for many years thereafter. We think the record sufficiently shows his solvency at the time of the conveyance.

II. The defendant urges that the conveyance was not fraudulent if the grantee had no knowledge of the fraud at the

time. The rule applies only when an adequate consideration is given. Commercial Savings Bank v. Balderston, supra, loc. cit. 219 Iowa 1255, 1256, 260 N.W. 731, and cases there cited.

For the reasons set out in Division I the judgment of the trial court was correct.—Affirmed.

All JUSTICES concur.